(No. 24970.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN KOZLOWSKI, Plaintiff in Error.

*Opinion filed February 20, 1939.*

EMMET F. BYRNE, (CLYDE C. FISHER, of counsel,) for plaintiff in error.

JOHN E. CASSIDY, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, BLAIR L. VARNES, and RICHARD B. AUSTIN, of counsel,) for the People.

Mr. JUSTICE GUNN delivered the opinion of the court:

On October 2, 1936, John Kozlowski (hereinafter called defendant) was indicted jointly with Elmer Swanson and Walter Boreman on a charge of "robbery with a gun." Swanson, after being granted a severance, entered a plea of guilty. Boreman and defendant were convicted at a trial in the criminal court of Cook county. Defendant, alone, appealed to this court where his conviction was reversed and the cause remanded. (*People* v. *Kozlowski*, 368 Ill. 124.) At a second trial in May, 1938, defendant was again found guilty as charged and the cause is now before us on writ of error.

On behalf of the People, the record tends to show that about 2:15 P. M., on Saturday, September 26, 1936, the William B. Fenton tavern at 900 West Fifty-ninth street, in Chicago, was held up and robbed by four men armed with guns; that the robbers, upon entering, forced the proprietor, employees and patrons into a small back room near the end of the bar, and took the sum of $40 from the drawer of a table there.

Alexander Zable testified that at the hour stated, he was in the back room where, as an employee, it was his duty to take bets on horses; he had obtained $50 from the bartender a few minutes before and placed it in the table drawer; that he heard someone behind him give the command to "stick them up," looked around and saw a man with a gun who told him to "go against the wall." As he started to comply, a shot was fired and he dropped to the floor where he remained two or three minutes during which time he heard an exchange of shots. When he arose, he saw a man lying on the floor with officer Ryan standing over him with a gun. The money was then missing from the table drawer. He had seen two men with guns in their hands, one standing in the doorway he recognized as Walter Boreman whom he had known by sight about fifteen years, the other, a tall and slender man wearing a light hat, with a handkerchief covering the lower part of his face.

The proprietor, William Fenton, said he was standing near the rear end of the bar talking with sergeant Ryan when he heard the "stick up" command. He saw a man with his right hand in his pocket as though he had a weapon, telling everyone to back up. He raised his hands and had gone back about four feet into the back room when he heard a shot. On turning in that direction, he heard several more shots and saw a man firing while holding a handkerchief over the lower part of his face. He saw the handkerchief drop as he continued firing and then noticed the man cover the gun with a handkerchief and run out. At this time there was a chandelier hanging from the center of the room with four lights burning. Fenton was within four or five feet of the man with the gun when the handkerchief fell and said he could see his full face and identified the defendant as the gunman.

Frank Carlson, a bartender for Fenton, was on duty at the time of the holdup, saw two of the robbers with guns but said he would not be able to identify any of the robbers if he saw them.

Officer Ryan was near the back end of the bar talking to Fenton shortly after 2:00 o'clock, when a command was given to "stick them up, get up against the wall." Everyone in the place was then lined up with their hands raised and their backs to the wall. A man was standing in the doorway with a handkerchief over his face and a gun in his hand. Another was coming along the front of the line with his hand in his pocket. When this man got to the end of the line, Ryan drew his gun and he and the man in the doorway started shooting. The man coming along the front of the line was killed. Ryan said the gunman in the doorway was a slender man about six feet tall, weighed about 160 pounds, wore a dark suit and a dark gray hat. He could not identify any of the men who participated in the robbery.

Thomas Kilganon was the owner of a tavern at 1009 West Sixty-third street, in Chicago. On the day in ques-

tion, he went to work about 1:00 P. M. Shortly thereafter a man peered through the window with his hands at a point above his forehead and then walked on. In about five minutes the same man repeated the performance. A few minutes later two men entered, one of whom he had known by sight for three or four months. This was about 1:30 P. M., and, shortly after, the man who had been looking through the window came in, joined the other two and each drank a glass of beer. He learned later the name of one of the first two men was Walter Boreman, and witness identified defendant as the man who looked in and later joined these two. He also remembered that before any of the three men mentioned came into the tavern, a young man entered, walked through to the wine room at the back, looked in and immediately walked out. He identified People's exhibit No. 2, being a picture of Elmer Swanson, as this latter man.

Charles Strasser, employed as a bartender in a tavern at 1143 West Sixty-third street, noticed defendant seated at a table there about 3:00 o'clock; he had been there only long enough to drink a glass of beer when witness saw him look out and call a man from across the street. The two then had a glass of beer and left the tavern in about ten or fifteen minutes. He identified People's exhibit No. 2, being the picture of Elmer Swanson, as the man defendant called into the tavern. He definitely remembered defendant was in the tavern a very short time. The following Monday night, Strasser was at the Englewood station, saw the defendant who, in response to an officer's question, stated he was in Strasser's tavern on Saturday afternoon.

Officer John White, upon reporting for duty at Englewood station about 4:00 P. M., on September 26, was directed to look for three men who had held up a tavern. Accompanied by two other officers, he drove toward the Walter Boreman home at 1232 West Forty-ninth Place. They parked their car at the end of the block and as they

were walking down Forty-ninth street saw Boreman and two other men leave the house. As the men approached they separated and spread. The officers thereupon drew their guns and arrested and searched the three men, who were Walter Boreman, Elmer Swanson and the defendant. Two 38-caliber revolvers were found on Swanson but the others were unarmed. Officer White interrogated the defendant who gave his name as John Walker, as well as giving a fictitious address, but that evening, when confronted with his correct name, admitted his identity. Defendant was sullen and defiant and would not answer questions asked him that day or on Sunday following, but on Monday said he went to Boreman's house with Swanson to talk with him about a wedding reception that night and denied participation in the robbery.

The defendant testified. He stated he had been unemployed for seven weeks prior to September 26; denied being in or near the Fenton tavern on the day it was robbed; said he had known Walter Boreman a few months but was not acquainted with Swanson or with Irvin King, the robber who was killed in the tavern; he left home about 1:10 P. M. that day, boarded a street car going north, left it at Sixty-third and Racine to take another car toward Halsted street to do some shopping. On reaching Sixty-third street, it was raining and, no car being in sight, he stepped over to a tavern at 1143 West Sixty-third street, where he saw the witness Strasser. It was then about 1:30 and he remained in the tavern until 3:30, took a car to Forty-ninth street and walked to the home of Walter Boreman to talk to him about a wedding reception that evening. He found Boreman's sister and grandmother at home and also saw a stranger there whom he later learned was Elmer Swanson, talking to Boreman's brother. Boreman soon came, said he had to see some relatives and, as witness was going home, the two left together. As they walked east they discussed the reception. The other man, Swanson, was a few steps

in the rear and was not in the conversation. They met the officers coming toward them, were arrested, searched and taken to the station. He said he did not know what he was being arrested for, did not want to worry his folks and therefore gave a fictitious name and address, but later gave his correct name. When questioned that evening, said he denied participating in the robbery or that he was in the tavern at 1009 West Sixty-third street, or peered through the window there, or knew Elmer Swanson. He further said he answered questions as well as he could but acted sullen and defiant because he was being kicked and beaten by officer White. He also stated that four of them were lined up at the police station that night when Fenton came in with some officers; that officer White asked if Fenton could identify any of them, to which Fenton replied he didn't think he could; that officer White then told him he had better think it over and change his mind or he would see his place of business was closed.

Officer White, on rebuttal, denied he kicked or beat defendant at the police station or made the alleged threat to close Fenton's place of business.

The People then introduced in evidence, over objection, plaintiff's exhibit No. 1, being a picture of Boreman, and exhibit No. 2, a picture of Swanson, each showing numbers across their shoulders.

The errors relied upon and argued on behalf of defendant for reversal, are that defendant was denied a fair trial and that the record shows a reasonable doubt of his guilt. Counsel for defendant first complains of the ruling of the trial court on the re-direct examination of officer White, when he was questioned as to whether he asked defendant where he was that afternoon. The principal objection made is that, during this examination, White testified defendant told him he went to Boreman's home with Swanson and it is urged here that counsel have been unable to find where

White made such a statement at the first trial. We find no merit in this contention.

Defendant next asserts it was error to admit in evidence the photographs of Boreman and Swanson, showing numbers printed across their shoulders, which he charges indicate clearly that these men were convicts. We have examined the record, and while we find defendant did object to their admission, no specific grounds therefor were stated and no authorities have been cited to sustain his contention.

Defendant also urges that error was committed in certain statements made by the assistant State's attorney in his opening statement and in his arguments to the jury. We have carefully read the excerpts to which our attention has been directed but find ourselves unable to attribute to the remarks made the prejudicial errors charged against them.

The final error charged is that there is a reasonable doubt of defendant's guilt, as shown by the record. The principal reason assigned in this connection is that only one witness, viz., Fenton, identified defendant as one of the robbers and that defendant's testimony showed Fenton did not identify him on the first occasion following the robbery, and that his admitted chance of observation at the time was so fleeting as to make his assertion of identity unworthy of belief. However, this court has frequently held that the testimony of one witness, even though denied by the accused, may be sufficient to sustain a conviction. *People* v. *Schanda,* 352 Ill. 36; *People* v. *Fortino,* 356 id. 415; *People* v. *Kelley,* 367 id. 318.

Criticism has also been directed to the testimony given by officer White. The only defense interposed was an alibi unsupported by any corroborating evidence. A reviewing court does not have the advantage afforded a jury to judge the credibility of each of the witnesses. This court will not reverse a judgment of conviction, where errors of law

have not occurred warranting reversal, unless the verdict is palpably contrary to the weight of the evidence or unless the evidence is such as to justify a reasonable and well-founded doubt of defendant's guilt. *People* v. *Fortino, supra; People* v. *Wynekoop,* 359 Ill. 124; *People* v. *Mitchell,* 368 id. 399.

While the record here is not perfect, we think it shows defendant had a fair and impartial trial and that the errors complained of could not reasonably have affected the result of the trial. In our opinion, the guilt of the defendant was shown beyond a reasonable doubt.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*