(No. 33850.—▮▮▮▮▮▮)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES SLEEZER, Plaintiff in Error.

*Opinion filed May 23, 1956—Rehearing denied September 24, 1956.*

TAYLOR E. WILHELM, of Mendota, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and HARLAND D. WARREN, State's Attorney, of Ottawa, (FRED G. LEACH, EDWIN A. STRUGALA, JOHN A. McNAMARA, and FREDERICK W. IRION, of counsel,) for the People.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This case comes here from the circuit court of La Salle County, wherein defendant was found guilty of grand larceny and was sentenced to confinement in the Illinois State Penitentiary for a minimum term of seven years and a maximum of nine.

The record in this case contains more than 1400 pages and the errors assigned are many. Only briefly, however, after a careful reading of the transcript and a study of the briefs, will we indicate our conclusions. State highway patrol officers Bunton and Gauvereau were cruising on Route 71, three miles northeast of Ottawa, Illinois, at three o'clock on Sunday morning, January 16, 1955. They observed defendant Charles Sleezer and one Bohlander passing them going in the opposite direction. There was no tail light on the wagon pulled by defendant's truck so the officers turned around and pursued them several miles and caught them after they had turned upon a side road. There was loaded on the truck a farm wagon-box and hitched to the truck was a wagon gear with another wagon-box. Because of their failure to display a tail light and have safety chains, Bunton prepared a traffic ticket. The defendant then attempted to bribe the officers, offering $100 to "fix this up." The defendant admitted to Hess, the

jailer, that he had been caught with the wagons he had picked up at an implement store, and that he was out trying "to make a fast buck." In the jail conference room in the presence of Bunton and Gauvereau and deputy sheriffs Eutsey and Dummett, he admitted he had stolen the wagons from Engelhaupt & Lyons at Lostant, Illinois.

Bohlander was one of Sleezer's hired men. In the evening of January 15, 1955, at about midnight, the defendant asked Bohlander to go with him for a ride. Shortly before the first trial of this case, which resulted in a disagreement, defendant with his counsel went to talk with Engelhaupt, the managing partner of Engelhaupt & Lyons, and there the defendant admitted he had taken the wagons and sought to pay damages for them.

On May 30, 1955, Louis Neuendorf, an attorney, overheard the defendant discussing his trial, which was to be had shortly, when he stated that : "The State police caught me cold stealing a wagon" and "However, at the trial which is coming up in a week or so I am going to get on the stand and tell them that I was going over to pick up some wagons for Bill Bohlander." Eighteen years previously the defendant had been convicted of a felony in Kendall County, Illinois. A record of this conviction was introduced for the limited purpose of affecting defendant's credibility and an instruction was given to the jury specifically prescribing such limitation. Complaint is made here that the record of conviction was too copious, that it included many prejudicial features in connection with the application for probation. We do not believe that the challenged proof was violative of the principles contained in the several cases cited in defendant's brief. In submitting the complete record from Kendall County, the People were attempting to satisfy the requirements as laid down in *Kirby* v. *People,* 123 Ill. 436.

The defendant testified in his own behalf, denying guilt and undertaking to explain all circumstances implying guilt.

He stated that Bohlander invited his assistance and the use of the truck to pick up the wagon involved which Bohlander told him he had purchased; that when the State police approached he was told for the first time that the wagons had not been paid for, so he immediately started back to Lostant to return the property, when he was arrested; that the money he tendered the officers was not in the nature of a bribe but to pay a fine for traffic violations. He further explained the money he tendered the owner of the wagons was accompanied with a statement that he had not meant to steal the wagons but that he realized "since Mr. Engelhaupt had not sold the wagons, anyone in possession was liable for damages sustained for the taking and I offered to pay such sum as a fair measure of damages and requested that he present such claim for damages through the State's Attorney's office."

There was evidence offered on both sides as to the general reputation of Sleezer and Bohlander for truth and veracity. There were those that entertained the view that Sleezer and Bohlander bore bad reputations and there were just as many that thought they were good.

Defendant filed petitions for change of venue because of the prejudice of the judge and for a change of venue from La Salle County. The defendant had already been granted a change of venue from Judges Robert E. Larkin and Louis A. Zearing. The statute prescribes "No more than one change of venue shall be granted to the defendant." The application for a change of venue from the county was addressed to the sound discretion of the trial judge. (*People* v. *Katz*, 356 Ill. 440; *People* v. *Cobb*, 343 Ill. 78.) Judge Robert E. Larkin on June 6, 1955, prior to the defendant's first trial, had ruled Taylor E. Wilhelm, counsel for defendant, guilty of contempt. It appears that much publicity was accorded this event. The trial judge in the instant case excused all jurors from Judge Larkin's home town since the judge there was held in high esteem.

The remaining jurors were closely questioned concerning their knowledge of the contempt proceedings. Since the defendant did not avail himself of all his peremptory challenges, it is fair to assume the jury selected was not affected by the adverse contempt publicity. The denial of defendant's motion for a change of venue from the county was not predicated upon whim, bad motive or an unjust exercise of discretion. *People* v. *Allen,* 413 Ill. 69.

Another assignment of error pressed with much vigor here is that the instructions read to the jury and the closing arguments of the State's Attorney incorrectly construed defendant's admission of guilt as a confession. Sleezer, Ray Eutsey, William Dummett, Glennard Bunton and Leo Gauvereau were congregated in the conference room of the La Salle County jail at about 4:30 A.M., January 16, 1955, when the defendant was questioned, and he then said he had stolen the wagons at Engelhaupt & Lyons on Route 51 at Lostant. This was an admission of the ultimate fact that he was guilty. In *People* v. *Allen,* 413 Ill. 77, the court said: "A confession has been defined as a 'direct acknowledgment of guilt on the part of the accused, either by a statement of details of the crime or an admission of the ultimate fact.'" *People* v. *Nitti,* 312 Ill. 73-92.

Defendant in his brief and argument complains of several instructions refused and given. We considered this assignment of error and find that it is without merit and does not warrant an extensive discussion.

The record in this case clearly indicates defendant's guilt. And he received a fair trial as free of error as was humanly possible under the circumstances. Defendant's counsel made it most difficult for the trial judge to conduct the proceedings in an orderly manner. On one occasion the trial court called opposing counsel to the bench for a hushed conference, but said counsel talked so loudly, his utterances could be heard by the witnesses and the jury. And again while the jury was in recess the court protested that counsel

could be heard back in the quarters where the jury was located. The court would ask counsel to be seated and discontinue ranting and raving only to have him refuse to obey.

Almost every adverse ruling was followed with "I move to withdraw a juror" from defendant's counsel. It would require unwarranted space to describe the wrangling and angry disputation that punctuated the trial throughout. This belligerent aggressiveness evidently provoked the trial judge into error in some of his rulings. For instance, the State's Attorney, in his argument to the jury said, "Charles Sleezer is a confirmed thief. He was a thief 18 years ago." The court overruled an objection to this highly prejudicial statement. This was error. (*People* v. *Decker*, 310 Ill. 234.) There were other errors, but of much less consequence. Defense counsel was guilty of improprieties in his closing argument. He went beyond the record in his statement that Bohlander's testimony was the product of "deals and collusion" between him and the prosecution.

Notwithstanding the confusion of this proceeding, the jury emerged with the correct verdict.

The evidence here so clearly indicates defendant's guilt that we cannot say the result would have been different without trial irregularities. When the error complained of could not reasonably have affected the result, the judgment should be affirmed. (*People* v. *Cardinelli*, 297 Ill. 116; *People* v. *Haensel*, 293 Ill. 33.) The question is not whether the record is perfect but whether the defendant has had a fair trial and if his conviction is based on evidence establishing his guilt beyond a reasonable doubt.

*Judgment affirmed.*