(No. 35086.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT L. STANTON *et al.,* Plaintiffs in Error.

*Opinion filed March 20, 1959—Rehearing denied May 19, 1959.*

Irving M. Wiseman, and O'Neill and O'Neill, both of Alton, for plaintiffs in error.

Latham Castle, Attorney General, of Springfield, and Joseph B. Schlarman, State's Attorney, of Carlyle, (Fred G. Leach, and William H. South, of counsel,) for the People.

Mr. Justice Davis delivered the opinion of the court:

Defendants, Robert L. Stanton and William C. Corbin, were convicted by a jury in the circuit court of Clinton County of the crime of burglary. Their post-trial motions were denied and each defendant was sentenced to serve a term of not less than one nor more than ten years in the penitentiary. They prosecuted a writ of error to review the judgment of the circuit court and contend that there was prejudicial error in the admission and exclusion of certain evidence and that the evidence was not sufficient to support a conviction of the crime charged. These assignments of error necessitate a detailed review of the evidence.

The V. F. W. Club, a corporation, owned and occupied a clubhouse located on the north side of U. S. Highway 50, about three-quarters of a mile east of Trenton in Clinton County which was a one-story building of concrete block and brick construction, with doors on the north, south and east sides. The south or front door was about 50 feet north of the highway. The east door, referred to as the

warehouse door, was situated about 15 feet south of the northeast corner of the building. The rear door was located near the center of the north side of the clubhouse. It was equipped with a snap lock which could be activated by inserting and turning a proper key in the door knob. Windows were located in the north, west, and east walls of the building. A baseball field equipped with large flood lights, was adjacent to and east of the clubhouse. These lights illuminated the baseball grounds and the east side of the building. A public roadway extended from route 50 to a cemetery located north of the club.

Charles Satterfield, club manager, closed the club about midnight on June 29, 1957. He took the money out of the cash register, except for 50 or 60 cents in change which consisted of a quarter, dime, nickel and some pennies, and locked and barred the inside of the east or warehouse door, which had beer and soda cases stacked against it to a height of four to six feet. He locked and barred the front door from the inside and left the club by the rear door, which he locked with the regular lock. In addition, he placed a bar across the outside of the door, fitted it into the door casing and secured it with a padlock.

These unusual precautions were taken since the club had been burglarized on several prior occasions. In addition, the members had organized a protective committee and set up a plan whereby they could be alerted in event of further trouble. At about 2:30 or 3:00 A.M. on the 30th, Williard Therion, a police officer of the city of Trenton, received a telephone call advising him that a suspicious car had been seen on the road leading to the cemetery, north of the club. He called Herbert W. Faitz, a State police officer residing in Trenton, and several other persons. As a result, a number of members drove to and surrounded the club.

Therion, apparently the first to arrive, drove to a light pole located at the rear of the building and pulled a switch

which turned on the flood lights. He then ran toward the building and, when in a position from which he could see the illuminated east side of the clubhouse, he saw two men come out of its east door. They were running and continued to run despite the fact that he ordered them to halt. One of the men, later identified as the defendant Corbin, ran south to route 50 and then into a cornfield.

Officer Faitz, who had been stationed at the south side of the building, gave chase, fired his pistol in the air, and commanded him to halt. After a second shot had been fired, Corbin dropped to the ground, and Faitz ordered him to stand with raised hands. Corbin, who was then wearing gloves, surrendered and was placed in the custody of Dan Bryson, a deputy sheriff.

Meanwhile, the man later identified as the defendant Stanton, had run in a southeasterly direction. William Alexander, one of the club members, while riding in a car in an easterly direction on Highway 50, saw the lights come one and then saw both men come out of the east door of the clubhouse. As Stanton ran away, both Alexander and Therion pursued him into a cornfield east of the building where he dropped to the ground. After warning shots were fired, Stanton got up with his hands raised and was taken into custody by officer Faitz and Sylvester Spihlman, a deputy sheriff. As they were taking Stanton to the club, deputy Spihlman accidentally discharged the gun which he had been carrying at his side. The bullet passed through the fleshy portion of both of Stanton's legs and Faitz immediately took him to the hospital at Breese.

Satterfield arrived in time to see the two men run from the clubhouse. On examining the building, he found that the bar which he had placed on the back door the night before had been torn off and the padlock broken; and that the inside bar had been removed from the warehouse door which was open, and the merchandise, which had been stacked in front of it, had been moved. He observed that

the cash register was open, the coins he had left in it the night before were missing, and he found a sledge hammer and pry bar inside the building near the front door.

After apprehension, Corbin was taken into the club-house by deputy Bryson who searched him and found fifty-four cents in his pocket. Bryson asked him where he got the money and Corbin replied, "Out of the register." Eugene Abernathy, another State police officer, and sheriff Henry Klutho arrived at the club at about 3:30 A.M., after Stanton had been taken to the hospital, and found Corbin in the custody of Bryson. Abernathy asked Corbin what he was doing in the clubhouse and Corbin replied that he needed the money.

Klutho examined the rear door. He testified that it had been pried open; that he found several pry marks on the door and casing; and that the marks could have been made by a tool of the type of the pry bar found inside the build-ing. He also testified that it would have been possible to spring the latch so that the door would open and thereafter latch normally because it was a snap or catch lock. Officer Therion was of the same opinion.

Therion made a further investigation after daylight. The ground was damp and the corn which was about a foot high had recently been cultivated. He easily traced the footprints in the cornfield to the point where Stanton dropped before he was apprehended. Nearby he found a pair of gloves, a .38 caliber pistol, which was cocked, and various tools including a punch. Later the same day Therion followed Corbin's tracks into the cornfield and found a .45 caliber automatic pistol fully loaded and cocked near the place where Corbin dropped to the ground. All of these items were turned over to sheriff Klutho and were intro-duced in evidence at the trial. Klutho testified that Corbin admitted ownership of the .45 caliber pistol.

Therion also investigated an automobile which was parked and unattended on the cemetery road. It bore Mis-

souri license plates, but a set of Illinois plates was found in its trunk. Inquiry revealed that the car was registered in Stanton's name, and that the Illinois plates rightfully belonged on it. Stanton repossessed the vehicle after his release on bond.

Defendants did not testify but called as witnesses sheriff Klutho and officer Faitz, who had testified for the People. Klutho produced the trousers worn by Stanton at the time he was shot, stated that they were in the same condition as when taken from Stanton, and identified the holes made by the bullet.

Faitz was asked about the report he made to his superior officer following the occurrence in which he stated that a window at the club had been broken. He produced this written report and handed it to defense counsel. He admitted that he had not examined the building thoroughly; that his report that a window had been broken was based on information given him by members whose names he did not recall; and that he reported that it appeared that defendants gained entry by breaking a window. He was asked whether certain tools introduced in evidence by the People could be used in automobile work and replied that it was possible. He also stated that Spihlman, Bryson and Alexander, who had testified for the People, were automobile mechanics and sold such tools. Defense counsel did not offer the written report of officer Faitz in evidence at the trial.

The foregoing, in addition to medical evidence as to the nature and extent of Stanton's injuries, constituted all the evidence introduced by the defendants. The doctor who treated Stanton stated that he made a normal recovery.

The first assignment of error relates to the testimony concerning the statements made by Corbin to various witnesses. Defendants take the position that these statements were a confession and that the testimony was admitted in violation of section 1 of division XIII of the Criminal

Code. (Ill. Rev. Stat. 1957, chap. 38, par. 729.) The pertinent part of the enactment provides that whenever a written or oral confession shall have been made before any law enforcement officer or agency by any person accused of a crime, a copy of it, if written, together with a list of the names and addresses of the persons present at the time, shall be given to defendant or his counsel prior to arraignment; that if such confession was not reduced to writing, then a list of the names and addresses of all persons present at the time the confession was made shall be furnished; and that no confession shall be admitted as evidence in any case unless the confession and list of names and addresses of persons present is so furnished.

The record shows that the defendants were not represented by counsel at the time of their arraignment; that the court directed the State's Attorney to furnish them with copies of the indictment, lists of jurors and witnesses, and copies of any statement or confession; that the State's Attorney stated there were no confessions in the case; that when the case was called for trial, counsel for defendants asked that the State furnish copies of any written confessions or the names and addresses of witnesses to any oral confessions and said: "I use the word confession and not admission;" that the State's Attorney replied: "We have no confessions, either written or oral. There's one or two admissions of items in the case, but as to confessions, we have none, either orally or in writing;" and that the court then stated that if there were none, the statute would not apply.

Deputy Bryson, a witness for the People, testified that Corbin stated that he got the money "out of the register." Thereupon, defense counsel objected and moved for a mistrial. The motion was denied. Like objections and motions were made and overruled when officer Abernathy testified that Corbin said he was there because he needed the money and when Sheriff Klutho testified that Corbin admitted

ownership of the .45 caliber pistol. However, at the close of the People's case, the court orally instructed the jury to disregard any admissions by the defendants, or either of them, which had been given in evidence on behalf of the People.

There is a distinction between a statement which is only an admission and one which constitutes a confession of guilt of the crime charged. A confession is a voluntary acknowledgment of guilt after the perpetration of an offense, and it does not embrace mere statements or declarations of independent facts from which guilt may be inferred, while an admission is any statement or conduct from which guilt of the crime may be inferred but from which guilt does not necessarily follow. *People* v. *Mowry,* 6 Ill.2d 132; *People* v. *Wynekoop,* 359 Ill. 124; *People* v. *Okopske,* 321 Ill. 32; *People* v. *Arthur,* 314 Ill. 296; *People* v. *Kircher,* 309 Ill. 500.

Thus, in *Kircher,* where the charge was murder, a statement by the accused that he had fired his gun at a man near the place where deceased was found shot to death was held to be only an admission which did not require preliminary proof of the voluntary character of the statement. In *Wynekoop,* another murder case, the accused, a physician, stated that she had administered chloroform while examining her daughter-in-law, whom she later noticed was not breathing, and that she then shot her. This was held to be an admission, not a confession. And, in *People* v. *Sleezer,* 9 Ill.2d 57, a larceny case, we held that the statement by the accused that he had stolen wagons at a certain place was an admission of the ultimate fact of guilt and therefore a confession.

The defendants cite *People* v. *Sleezer,* 9 Ill.2d 57, *People* v. *Rogers,* 413 Ill. 554, and *People* v. *Allen,* 413 Ill. 69, as authority for the proposition that the statements made by Corbin constituted a confession. These cases all involved

statements which we declared to be confessions, while we conclude that Corbin's statements were only an admission.

In the instant case, burglary was the only charge upon which the defendants were tried. The essence of the crime of burglary is breaking and entering with felonious intent. The statements attributed to Corbin did not amount to an ultimate confession of guilt because they did not necessarily establish that the defendants broke into and entered the clubhouse. These statements amounted only to incriminating admissions which were admissable without preliminary proof of their voluntary character and were not within the purview of the statute requiring that names and addresses of witnesses to a confession be furnished the accused. It was not incumbent on the court to instruct the jury to disregard the statements which were properly admitted in evidence. However, the error of the court in so doing was harmless so far as defendants were concerned.

Defendants contend that the evidence does not establish their guilt beyond a reasonable doubt, and urge that there was no credible evidence that they made an entry. This ignores the positive testimony of Alexander and officer Therion that defendants were seen to leave the clubhouse through its east door; that its interior was in a state of disorder; and that the lock and bar on the back door had been tampered with. At the trial both Therion and Alexander were subjected to extensive cross-examination in an effort to demonstrate that they were in no position to see what they said they saw. We have read the record and cannot agree with defense counsel that their testimony is confused, unreliable and unworthy of belief. On the contrary, any discrepancies or inconsistencies in their testimony were of a minor nature and do not merit discussion.

Defense counsel argues that the testimony for the People is not reliable since the report of officer Faitz states that entry was gained by breaking a window while the inference

to be drawn from the testimony of other witnesses is that entrance was made through the back door. However, the testimony of such other witnesses is not confused and unreliable merely because Faitz, who made no personal investigation of the building, relied on hearsay for some of the statements in his written report. The evidence shows that Faitz took defendant Stanton to the hospital at Breese and stood guard over him there for several hours and until relieved by a deputy sheriff. He freely admitted that his report that a window had been broken was based on what he heard, not what he saw.

The People did not have to prove the particular manner by which an entry was made. (*People* v. *Reeves,* 360 Ill. 55.) Burglary can seldom be proved by direct evidence of the actual breaking and entering and the inference of guilt in most cases must necessarily be drawn from other facts satisfactorily proved. (*People* v. *Geisler,* 348 Ill. 510.) In *Reeves,* a burglary case, an office was entered on a holiday while the doors were locked and the safes were broken into by force. Stamps were removed, but the evidence showed no marks of forcible entry on the doors, windows or entrance ways. However, the defendant was seen leaving the ninth floor of the building in which the office was located, and was later identified as the man who descended in an elevator and fled through a basement window. We sustained a verdict of guilty and held that the *corpus delicti* of the crime of burglary had been satisfactorily established.

The evidence in this case is much stronger, and could leave no reasonable doubt that a burglary had been committed and that defendants were responsible. We will not reverse a conviction on the evidence unless we can say, after its careful consideration, that there exists a reasonable and well founded doubt of the guilt of the accused. (*People* v. *Hendron,* 384 Ill. 529; *People* v. *Kozlowski,* 370 Ill. 639; *People* v. *Fortino,* 356 Ill. 415.) There is no such reasonable doubt in our minds in this case.

Defendants also say that the court erred in admitting in evidence the money found on the person of Corbin, the pry bar, hammer, tools and guns because of lack of proof that these items were connected with the defendants, in their possession or under their control. The money was found in Corbin's pocket and he admitted that he got it from the cash register. The other items were either found on the premises from which defendants fled or at or near the place where the defendants were apprehended after flight. Their admission was proper. Cf. *People* v. *Malmenato*, 14 Ill.2d 52.

Defendants' final contention is that their constitutional rights were violated in that the People deliberately suppressed evidence favorable to them. This assignment of error refers to the written report of officer Faitz and his statement that a window had been broken and entrance gained thereby. The defendants called the officer as their own witness and his written report was then handed to defense counsel, yet they made no attempt to introduce it in evidence in the jury trial. Not until the hearing of the post-trial motions did the defendants seek to have it admitted. The court properly denied the offer on the ground that the report had been available at the trial.

There is no evidence that the State's Attorney knew of the contents of the report or that he deliberately suppressed it. Its contents were first brought out in the cross-examination of Faitz and again when he was called as a witness for defendants. The jury was advised of the substance of the report which was favorable to defendants and defense counsel was fully aware of its contents. If it contained anything favorable to defendants, in addition to the facts adduced by the examination of Faitz, it was the duty of defense counsel to offer the report in evidence. If it can be said that there was any suppression of the report, the fault rests with the defendants.

This report is in the record and we have read it. In

addition to referring to the broken window, it also details the facts leading to the apprehension of defendants. When considered in its entirety, the reluctance of defense counsel to submit it to the jury can be understood.

It is our opinion that defendants had a fair trial free of substantial prejudicial error and that the evidence established their guilt beyond a reasonable doubt. The judgment of the circuit court of Clinton County is affirmed.

*Judgment affirmed.*