(No. 35207.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN ASHLEY, Plaintiff in Error.

*Opinion filed January 22, 1960.*

RICHARD J. SHORT, of Chicago, for plaintiff in error.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and FRANCIS X. RILEY, and JAMES R. THOMPSON, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DAVIS delivered the opinion of the court:

The defendant, John Ashley, and two others were indicted for armed robbery in the criminal court of Cook County. In a separate trial before a jury, he was found guilty, judgment was entered on the verdict and post-trial motions were denied. After considering circumstances in aggravation and mitigation of the offense, from which it appeared that defendant had a prior criminal record, the court sentenced him to the penitentiary for a term of not less than 15 years nor more than life.

By writ of error, defendant seeks to reverse the judgment of the trial court and here contends that the evidence did not establish his guilt beyond a reasonable doubt and that prejudicial errors were committed in the course of the trial.

All testimony relative to the robbery was offered on behalf of the People. The defendant did not testify on his own behalf and produced only one witness upon whose testimony he predicated the defense of alibi.

On May 19, 1958, at approximately 2:50 A.M., a tavern called Kay's Dugout, located at 3406 N. Sheffield

Avenue, Chicago, was robbed. At the time, Harry Gaddo, bartender, and eight or ten patrons were in the tavern. The bar extended from near the front to the back of the room and the customers were seated on stools which were spaced along the front of the bar. A restroom was located at the rear of the room.

At the time in question, a man about five feet six inches tall, who weighed approximately 130 pounds and wore a brown suede jacket, came into the tavern and asked where the restroom was located. Gaddo directed him to it and then walked to the other end of the bar.

A second man entered the tavern, sat down on the first stool and ordered a highball. He was about six feet tall, weighed approximately 178 pounds, wore a dark jacket and brown fedora hat, and had no mustache, goatee, or distinguishing marks. This man was identified as the defendant by Gaddo, Mary Buchel, Walter E. Mayer and Peter Filpi.

Gaddo served the drink to defendant, collected his money, and then walked to the other end of the bar and was talking to patrons when the defendant stood up and dropped the highball to the floor. At the sound of breaking glass, another man rushed into the tavern, jumped around the bar, placed a knife at Gaddo's throat and announced, "It is a holdup." This man took about $200 from the drawer of the cash register and a like amount of money from nearby cigar boxes. As he took the money, defendant stood near the door with a "silver plated" gun in his hand. At the trial, Gaddo identified a revolver which was admitted in evidence as "looking like" the weapon which defendant had in the tavern.

While the robbery was in progress, the robber who first entered the tavern, put a gun in the back of Peter Filpi, a patron, and took his money and wristwatch. The wristwatch was identified by Filpi at the trial by virtue of certain distinctive characteristics, including a chipped crys

tal. It was found by police officer Pittacora in the defendant's apartment.

During the robbery, Mary Buchel, Joan Reeves, and Walter E. Mayer, a lieutenant in the city fire department, entered the tavern. As they walked toward the back of the room, the robber who took Filpi's money and wristwatch ordered them to sit down and Mayer scuffled with him. The defendant came to the aid of his fellow robber; pistol whipped Mayer several times, and then fired his revolver. The bullet grazed Mayer's head and entered Mary Buchel's shoulder. At this time, defendant threatened to kill Mayer or anyone else who moved.

Mayer, Buchel and Filpi all testified that it was the defendant who fired the shot and the description which Mary Buchel gave of the defendant confirmed in detail that given by Gaddo. On May 25 and 26, Mayer, Buchel, Filpi and Gaddo, separately picked the defendant out of a police line-up and identified him as one of the robbers.

After the defendant was arrested, he was questioned by officer Pittacora, denied participation in the robbery and gave the police permission to search his apartment. During the ensuing search, the watch belonging to Peter Filpi was found.

After the defendant fired the shot, Mary Buchel realized that she had been hit and turned to hold onto the bar. Thereupon, the robber who first entered the tavern removed her wristwatch from her arm and her billfold from her purse. Before the robbers left the tavern, they lined the patrons and bartender up against the wall and the defendant said that any person who attempted to leave the tavern would be killed. When the police arrived they took Mary Buchel to a hospital where a bullet was removed from her shoulder the following day.

John Collins, a police officer, arrested defendant and another man in Chicago on May 25, 1958, at 7:30 P.M. Earlier in the day he went to Hammond, Indiana, where

he conversed with lieutenant Vicari of the Hammond police, and there saw a certain revolver. Later that day, lieutenant Vicari delivered this revolver to Collins in Chicago, along with certain cartridges. Collins identified a revolver produced at the trial as the weapon which Vicari delivered to him. This was done by means of an inventory slip prepared by Collins at the time, which described the exhibit and listed its serial number. He also identified the cartridges which he had marked. He sent the revolver and cartridges to the crime laboratory for the purpose of comparison.

Dr. Theodore A. Fox, a practicing physician and surgeon, testified that he attended Mary Buchel in the hospital and removed a bullet from her right shoulder which he identified at the trial from the distinguishing marks made by the surgical instrument used in the operation. Forest E. Benz and Anton Wenskus, police officers attached to the Scientific Crime Detection Laboratory, testified concerning the delivery of this bullet and the revolver and cartridges to the laboratory, and the methods used in handling marking and preserving the various exhibits which were identified by them at the trial.

John G. Sojat, another officer connected with the laboratory, testified at length concerning his experience, training and qualification as a fire arms identification technician. His testimony, which was uncontradicted, firmly established that he was an expert in this field. He identified the revolver produced in court as the weapon he had test-fired twice in the laboratory. He further identified the bullets recovered from the firing test and the bullet recovered from the shoulder of Mary Buchel, which he had examined under a microscope. After explaining the basis for his conclusions, Sojat stated that, in his opinion, the three bullets had been fired from the same weapon and that the bullet which struck Mary Buchel had been fired through the revolver produced at the trial.

At the conclusion of the People's case, the revolver,

wristwatch, inventory slip for the revolver, and recovered bullet, were admitted in evidence over defendant's objections. The unfired cartridges delivered with the gun and the test-fired bullets were admitted without objection. A motion for a directed verdict, made but not argued, was denied.

Gus Alpogianis was defendant's only witness. He testified that he was one of the proprietors of the restaurant where defendant had been employed for about five weeks prior to his arrest and that his regular hours were from 7 until 2. On cross examination, Alpogianis testified that he was working in the restaurant at 2:00 A.M. on May 19, 1958, but did not remember who was there at that time.

Defendant contends that the evidence does not establish his guilt beyond a reasonable doubt due to lack of certainty in his identification. He characterizes the testimony of the identifying witnesses as vague, conflicting and uncertain. We do not agree with this conclusion.

The description of the defendant and the clothing he wore, as given by witnesses Gaddo, Filpi and Buchel, is clear and harmonious. Mayer was the only identifying witness who failed to give a detailed description of defendant, but this is understandable when we consider that Mayer was suddenly assaulted and beaten over the head with a pistol. However, he did say that he would never forget his assailant's face. Each of these witnesses identified the defendant on separate occasions in a police line-up about a week after the robbery, and also identified him in open court at the trial. Though subjected to an extensive, rigorous and searching cross-examination, the testimony of each witness stood unimpaired.

In a criminal case the People must prove beyond a reasonable doubt not only the commission of the crime charged but also its perpetration by the accused. (*People v. Davis,* 14 Ill.2d 196; *People v. Kidd,* 410 Ill. 271.) Where the

*corpus delicti* is proved and only the question of identification remains, the testimony of one credible witness, if positive, is sufficient to convict even though contradicted by the accused. (*People v. Burts,* 13 Ill.2d 36; *People v. Williams,* 12 Ill.2d 80; *People v. Wilson,* 1 Ill.2d 178.) The fact that some of the persons present were not called to identify the accused does not require a reversal, particularly when it appears that other eyewitnesses had made positive and unhesitating identification. *People v. Crenshaw,* 15 Ill.2d 458.

In the case at bar, the identification witnesses had ample opportunity to observe the participants during the commission of the crime. The testimony showed that the tavern was lighted with 15 flourescent and 8 or 9 regular lights. The robbers were present about ten minutes during which time they were in plain view of the customers and the bartender. They wore no masks and were not disguised in any way. It was the function of the jury to pass on the weight and credibility of the testimony of these witnesses and their verdict will be disturbed only if it was so improbable as to raise a reasonable doubt as to the guilt of the defendant. (*People v. Bybee,* 9 Ill.2d 214; *People v. Allen,* 413 Ill. 69.) Such doubt does not here exist.

Defendant contends that the trial court erred in admitting the revolver in evidence and relies principally upon *People v. Smith,* 413 Ill. 218. He argues that "in order to be admissible the weapon must be found in the control or possession of the defendant, or in his dwelling, at or near the time of his arrest." No case is cited which holds that those are the only circumstances under which a weapon is admissible. Indeed, those conditions may be present, yet the particular weapon may be inadmissible. We so held in *Smith.* There the charge was murder and the undisputed evidence showed that the crime was committed with an automatic pistol. Sawed-off shotguns were found in the trunk

of the car in which defendant was seated at the time of his arrest. We held that the admission of those shotguns was error in that they had no connection with the crime.

However, the admission of a weapon may be proper, although it is not found in the possession of the defendant at or near the time of his arrest. In *People* v. *Collins*, 375 Ill. 253, the defendant was charged with murder. He was arrested on the day the crime was committed. Some months later an automatic pistol and other weapons connected with the murder were found in a public dump not far from the scene of the homicide. There was testimony that a person answering defendant's general description had been seen in the vicinity of the dump after the killing. Expert ballistic testimony proved that the pistol found in the dump was the weapon which fired the fatal shot. We held that the pistol and other items were properly admitted in evidence.

Thus, a weapon may be admitted in evidence where there is proof to connect it with the defendant and the crime. However, it is not necessary to establish that the particular weapon was the one which was actually used. Where the proper connection is established and it is shown that defendant possessed a weapon which could have been used in the commission of the crime, it may be admitted in evidence. (*People* v. *Mikka*, 7 Ill.2d 454; *People* v. *Dale*, 355 Ill. 330.) Likewise, where it appears that defendant participated in a crime in which the weapon was used, it may be admitted though he himself did not wield or possess it. *People* v. *Maciejewski*, 294 Ill. 390; *People* v. *Sobzcak*, 286 Ill. 157.

In this case the expert testimony established that the revolver produced at the trial was the weapon actually used in the robbery. One witness testified that it looked like the gun which defendant had in his hand at that time. Two other witnesses described the general appearance of the weapon wielded by defendant. Their collective testimony shows that only one shot was fired in the tavern. Defendant

was positively identified as the man who fired the shot. The bullet was recovered. The undisputed evidence shows that it was fired through the revolver which was admitted in evidence. This testimony established a direct connection between the revolver and the defendant as well as between the weapon and the crime. The revolver was material and relevant evidence under the charge laid in the indictment and the trial court did not err in admitting it.

Defendant assigns error in the refusal of the court to give an instruction which was tendered on the subject of alibi. To avail himself of the defense of alibi, a defendant must account for his whereabouts during the time when the crime could have been consummated. (*People* v. *Williams,* 17 Ill.2d 193; *People* v. *Van Dyke,* 414 Ill. 251.) Where the defendant's evidence to prove an alibi failed to cover a material portion of the time within which the crime charged must have been committed, the trial court did not err in refusing to give a separate instruction in regard to the defense of an alibi and its proof. *People* v. *Wynekoop,* 359 Ill. 124.

In the case at bar, defendant's evidence did not tend to establish an alibi. The testimony of Alpogianis indicated that defendant was employed by him on May 18, 1958, and that his regular hours were 7:00 P.M. to 2:00 A.M. However, he was asked on cross-examination what employees were present in the restaurant at 2:00 A.M. on May 19, 1958, and he was unable to name anyone other than himself. When it is remembered that the robbery in question took place between 2:50 and 3:00 A.M. on May 19th, it becomes apparent that the testimony of Alpogianis entirely failed to indicate the whereabouts of defendant during the time the crime was committed. Under these circumstances an instruction on alibi was properly refused.

Defendant also contends that certain remarks and conduct on the part of the State's Attorney during final argument deprived him of his right to a fair trial and were so

prejudicial as to require a reversal. During argument, defense counsel called the jury's attention to the fact that the People had failed to offer in evidence a police department inventory slip for the watch which was an exhibit. During this argument, a police officer handed the State's Attorney a slip of paper which he looked at and returned to the officer. In final argument, the State's Attorney stated that there was an inventory slip for the watch but that it wasn't necessary to offer it in evidence. The court promptly sustained an objection to this remark, ordered it stricken and instructed the jury to disregard it. This ruling was proper since such argument was not based upon the evidence.

However, not every improper remark of counsel will require a reversal. The record before us so clearly indicates the defendant's guilt that we cannot say that the result would have been different without the trial irregularities. Under such circumstances, the judgment should be affirmed. *People* v. *Sleezer,* 9 Ill.2d 57; *People* v. *Franklin,* 415 Ill. 514.

The purpose of reviewing a judgment in a criminal case is not to determine whether the record is perfect, but rather to resolve whether the defendant has had a fair trial under the law and whether his conviction is based upon evidence which establishes his guilt beyond a reasonable doubt. If the errors in the record could not reasonably have affected the result of the trial, the judgment should be affirmed. (*People* v. *Cardinelli,* 297 Ill. 116; *People* v. *Haensel,* 293 Ill. 33.) This is especially true in a case where the defendant did not testify or offer a defense worthy of the name. *People* v. *Westrup,* 372 Ill. 517.

The remark in question concerned a relatively minor and immaterial matter. The watch itself had been definitely identified and its recovery from defendant's apartment had linked him with the crime. The State's Attorney could properly state that an inventory slip was not necessary, and he exceeded the bounds of legitimate argument

only insofar as his statement indicated that such a slip had in fact been made. Such remark was neither calculated to inflame or prejudice the jury against defendant, nor was it of such nature that it prevented the jury from rendering a fair and impartial verdict. The verdict would have been the same, either with or without the objectionable statement, and it did not constitute a ground for reversal.

The record establishes that defendant had a fair trial. His rights were zealously guarded by the court and counsel during the entire proceeding. The evidence established his guilt beyond a reasonable doubt. No prejudicial errors intervened. The judgment of the criminal court of Cook County will be affirmed.

*Judgment affirmed.*