The People of the State of Illinois, Plaintiff-Appellee,
v. Harold D. Smith (Impleaded), Defendant-Appellant.

**Gen. No. 65–56.**

Second District.
November 5, 1965.

371

John R. Snively, of Rockford, for appellant.

William R. Nash, State's Attorney, Winnebago County, of Rockford (Alfred W. Cowan, Jr., Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

The defendant, Harold D. Smith, prosecutes this appeal following a jury verdict finding him guilty of armed robbery. On June 18, 1963, at approximately 9:30 p. m., a young woman entered the Sta-Von Tap in Rockford, Illinois, while four people, including the defendant, who had been in the tavern about ten

minutes, were sitting at the bar. The woman brandished a revolver and said, "This is a stick-up." She ordered the bartender to lie on the floor, which he did; pointed the gun at one of the patrons and told him to get the money, which he refused to do; and then pointed the gun at the defendant and said, "Hey you, Skinny, put the money in the bag." The defendant thereupon filled the bag with money from the cash register; asked the woman not to shoot; and threw the bag to her. She then ran from the tavern.

The police were called; came to the tavern and obtained a description of the robber; then left and returned shortly with Marilyn Moriarity, whom all of the witnesses, with the exception of the defendant, immediately identified as the robber.

Moriarity was arrested in the apartment of Wanda Newman, about one block from the scene of the robbery. Prior to the robbery, Moriarity and the impleaded defendant, Huntley, lived in the apartment across from Newman. Shortly after the robbery, the defendant went to Newman's apartment and spent the night. He was arrested the following day. The bartender testified that a bag found in Newman's apartment was very similar to the one used in the robbery. The defendant also had been in Newman's apartment shortly before the robbery. The defendant, Moriarity and Huntley had frequented the Sta-Von Tap on various occasions prior to the robbery.

Four days after the robbery, the defendant's mother found $788 in her apartment. She immediately notified the police. A total of $860.73 had been taken in the robbery. The defendant had not been employed prior to the robbery.

Moriarity testified as a defense witness, denying any implication in the robbery. For impeachment purposes, the court admitted in evidence portions of Moriarity's inconsistent prior written statement and

the testimony of a witness that he saw Moriarity dangle a string from her jail cell into the cell below and heard her say, "Tell Huntley and Smitty to plead not guilty and I will say they were not in on it."

The defendant has raised numerous grounds for reversal: we shall consider the substantial errors in the order presented. (Ill Rev Stats 1963, c 38, par 121–8). He first suggests that the trial court was without jurisdiction to try the case. This contention is based upon Ill Rev Stats 1963, c 146, § 26, which provides that in any case where there is more than one defendant, any defendant desiring a change of venue shall notify the other defendants as well as the State's Attorney. Upon presentation of the application for change of venue, the judge shall then ask the other defendants if they believe any judge or any two judges to be prejudiced against them, and, if so, the judge shall continue the cause for one day to enable them to also file an application for change of venue. In this case the defendant and the impleaded defendants, Moriarity and Huntley, all filed separate petitions for change of venue. Each petition contained a different combination of two of the three circuit judges, who the respective petitioners believed to be prejudiced against such defendant. The defendant's petition was acted upon first and was granted. The defendant argues that the failure of the court to act upon all three petitions simultaneously, and thereupon to remove all three judges from the case, constituted a violation of the statute.

■ This argument misconstrues the purpose of the statute as well as what actually happened in the case. The statute was designed to give all of the defendants, who are to be tried together, an opportunity to present a petition for change of venue. In this case, the other defendants had already filed their petitions for change of venue by the time defendant Smith filed his. All of

375

the defendants were represented by the same counsel and each of them had also filed a motion for severance. At the same time the court granted defendant Smith's petition for change of venue, it also granted the motion of each respective defendant for severance. Thus, there was no reason to hear the petitions for change of venue together. The defendant obtained the exact relief for which he had petitioned—a removal of the case from the two judges named in his petition for change of venue—as well as a severance, as prayed in his motion. His complaint in this respect is without merit.

█ The defendant also contends that the record is replete with examples showing the hostility and prejudice of the trial judge toward him. We recognize that jurors are ever watchful of the attitude of the trial judge; that they may discern any disbelief or hostility on his part; and that such conduct on the part of the trial judge is apt to influence the jurors in arriving at their verdict. To the end that each person accused of a crime may receive a fair and impartial trial by a jury, the trial judge in a criminal case should refrain from conveying to the jurors, by word or deed, his opinions on ultimate factual matters, the credibility of witnesses and the weight to be given to their testimony. People v. Santucci, 24 Ill2d 93, 98, 180 NE2d 491 (1962).

Defendant cites three instances evidencing that the record is "replete" with examples of prejudice and hostility. In the first instance, the State's Attorney objected to defense counsel commenting on the evidence in the course of cross-examination, and the court sustained the objection. Defense counsel then said, "I understand that the court can comment," to which the court replied affirmatively. Defense counsel then said, "I wish the court would," to which the court replied, "I can comment on the evidence and I think it is not material to this case." The second illustration occurred

376

when defense counsel was cross-examining a witness relative to the physical characteristics of an alley, and the court interposed, "This is absolutely immaterial in this case, Mr. Snively. Why spend time on this monkey business." Defense counsel then asked the court if he was prejudiced against him, to which the court replied that he was not. The last instance followed an exchange between the court and defense counsel after an objection of said counsel was overruled. The court stated, "Do I have to be any more specific with you, Mr. Snively? Okay."

 While the trial judge must be cautious to conceal his impressions or feelings, he must conduct the trial so that it proceeds with reasonable dispatch and at the same time maintain the dignity and order of the courtroom. Both the State and the defendant must be given a full and complete opportunity to present their respective cases in full. Such requirements are difficult of attainment, and particularly so if the trial judge permits himself to be sidetracked or led astray by the provocation of counsel. It would be a dangerous precedent to permit counsel to take advantage of statements of the trial court which were either invited or provoked by such counsel. People v. Sleezer, 9 Ill2d 57, 61, 62, 136 NE2d 808 (1956); People v. Westrup, 372 Ill 517, 520, 25 NE2d 16 (1940). We do not believe that the court's comments were such as to convey to the jury a feeling of hostility or prejudice toward the defendant and thereby deny to him a fair trial, or to render unavailing the subsequent instruction that the court had not expressed an opinion on the facts of the case or the credibility of the witnesses.

██ ██ The defendant next asserts that the court erred in admitting into evidence the cloth bag found in Wanda Newman's apartment and in admitting into evidence the money found in the apartment of the defendant's mother, in that the former was not properly

377

identified and the latter was neither properly identified nor found in the defendant's possession. As to the cloth bag, the bartender testified that it was the same size and color and "very similar" to the bag into which money had been placed during the holdup. It was found in the apartment where Moriarity was arrested shortly after the robbery and where the defendant was later in the evening. We believe that the bag was sufficiently identified and connected with the defendant and the crime to permit its admission into evidence. It was then for the jury to weigh and determine, as a matter of fact, the question of the identity of the bag and its effect as proof, if any. People v. Weaver, 18 Ill2d 108, 113, 163 NE2d 483 (1959).

As to the identity of the money, which by its nature lacked characteristics sufficient to distinguish it from any other money, it is admissible if there are sufficient facts to connect it to the crime in question. It is then for the jury to determine as a question of fact, the identity of the money. People v. Weaver, supra. There is no legal requirement that the money must have been in the possession of the defendant in order for it to be admissible. The basic problem is relevance and the question is whether the evidence sufficiently connected the money with the crime and with the defendant to make it relevant and of any probative value. People v. Jones, 22 Ill2d 592, 599, 177 NE2d 112 (1961); People v. Ashley, 18 Ill2d 272, 279, 280, 164 NE2d 70 (1960).

The money was found in the apartment of the defendant's mother, four days after the robbery; it was not hers; it was relatively close to the amount of money taken in the robbery; the defendant had not been employed prior to the robbery. We believe that the circumstances of this case sufficiently connected the money with both the defendant and the crime to render it relevant and admissible. It was then for the

jury to determine whether or not it believed this to be a part of the money taken in the robbery. People v. Jones, supra; People v. Ashley, supra; and People v. Weaver, supra.

 A police officer testified that Moriarity passed a piece of string down from the cell where she was confined to where the defendant was confined; and that Moriarity then called down, "Tell Huntley and Smitty to plead not guilty and I will say they were not in on it." The defendant objected to this evidence in that the act and statement were too remote; not a part of the res gestae; incompetent and immaterial. A statement is not necessarily inadmissible because it is made at a time other than when the crime was committed. The State did not offer this statement as a spontaneous declaration and as an exception to the hearsay rule, and the defendant offered no objection thereto as hearsay evidence. The statement was material for the purpose of establishing that Moriarity said this and it tended to connect the defendant with Moriarity and the crime. This evidence was admissible for the reason that it tended to prove that Moriarity made the statement; it was not offered to prove that the defendant was guilty of the armed robbery in question. In People v. Carpenter, 28 Ill2d 116, 190 NE2d 738 (1963), at page 121, the court discussed this question in these words:

> "The distinction between admissible testimony and that which is barred by the hearsay rule is well illustrated by Wigmore's example of the witness A testifying that 'B told me that event X occurred.' If A's testimony is offered for the purpose of establishing that B said this, it is clearly admissible—if offered to prove that event X occurred, it is clearly inadmissible, for the only probative value rests in B's knowledge—and B is not present to be cross-examined."

The propriety of the court's ruling in admitting this testimony is further sustained by the fact that Moriarity was a witness for the defendant and had an opportunity to deny that she passed the string to the cell below hers and then made the statement in question.

After her direct testimony as a witness for the defendant, Moriarity, on cross examination was questioned for the purpose of impeachment, relative to a prior and inconsistent statement made by her to a policewoman. The portion of the pertinent statement tended to cast doubt upon her denial, on direct examination, of any implication in the robbery. It is well established that prior inconsistent statements are admissible for the purpose of impeachment of a witness' credibility. Such evidence is not admitted as proof of the truth of facts stated by the witness, but to cast doubt on the testimony of the witness by virtue of the inconsistency. People v. Morgan, 28 Ill2d 55, 63, 190 NE2d 755 (1963); People v. Moses, 11 Ill2d 84, 87, 142 NE2d 1 (1957).

The court permitted the cross-examination of defense witnesses Moriarity and Huntley as well as of the defendant himself, relative to prior convictions, for the purpose of impeachment. Thereafter, the Clerk of the Circuit Court of Winnebago County was called to testify. He testified as to the contents of the court records of the Circuit Court of Winnebago County, including the convictions, in the three cases previously testified to by the witnesses and the defendant on cross-examination. The defendant contends that it was error to permit the cross-examination of the witnesses and of the defendant as to their prior convictions.

It is clear that as to a witness other than the defendant, proof of a prior conviction of an infamous crime may be established by cross-examination of the witness, without the introduction of the record itself into evidence. People v. Birdette, 22 Ill2d 577, 581,

380

177 NE2d 170 (1961); People v. Moses, 11 Ill2d 84, 88, 142 NE2d 1 (1957); People v. Halkens, 386 Ill 167, 177, 179, 53 NE2d 923 (1944). Our courts have held, however, that it is improper to cross-examine a defendant with respect to prior convictions for the purpose of discrediting his testimony. People v. Moses, supra, 88; People v. Donaldson, 8 Ill2d 510, 518, 134 NE2d 776 (1956); People v. Flynn, 8 Ill2d 116, 120, 121, 133 NE2d 257 (1956); People v. Halkens, supra, 175. Our Supreme Court formerly held that the effect of the defendant disclosing from his own lips the fact of his prior convictions was so damaging that the only manner in which a prior conviction could properly be established was by the record or an authenticated copy of the conviction. Under this view, if the defendant were also examined regarding his prior conviction, it would be reversible error.

Recently, however, our Supreme Court has modified this view and has held that the cross-examination of a defendant as to a prior conviction is not reversible error if the record is also admitted as proof of the conviction. People v. Squires, 27 Ill2d 518, 521, 190 NE2d 361 (1963); People v. Neukom, 16 Ill2d 340, 348, 158 NE2d 53 (1959). In the instant case, the record of the conviction was introduced by the reading therefrom by the keeper of such records—the Clerk of the Court. This is no less proper than the introduction of the physical record itself into evidence as an exhibit.

 While the manner of proving the prior conviction of the defendant in this case did not constitute error, we are not condoning the practice of examining a defendant as to such convictions any more than we believe the Supreme Court in Squires or Neukom was indicating its approval of such practice. We merely hold that in the case at bar, it was not error. It is conceivable that the examination of a defendant as to his prior conviction, in extremely close cases or in

those in which the nature of the offense elicited is revolting or heinous, may result in more than merely discrediting his testimony, and that the examination in such cases may constitute prejudicial error and grounds for reversal. In such event, the error could not be cured by subsequently proving the conviction in the proper manner.

 The defendant testified at the trial that the person he saw robbing the tavern wore black slacks. He was asked on cross-examination whether he had not previously testified, at the Moriarity trial, that the person was wearing a black skirt. He answered, "I believe I did, yes." Later the prosecuting attorney called the court reporter from the prior trial, who testified in rebuttal that the defendant had, in fact, stated that the robber wore a skirt. The defendant urges, and we agree, that it was improper to permit the court reporter to so testify. The admission of the defendant of the prior inconsistent statement was not sufficiently qualified to permit or require rebuttal. It cannot be said, however, that this error was sufficiently prejudicial to warrant reversal.

██ ██ The defendant also alleges that there was a fatal variance between the allegations and the proof in that there was no proof that the money taken had value or was legal money. The testimony was that the sum of Eight Hundred and Sixty Dollars and Seventy-three Cents was taken, and two rolls of money were offered and admitted in evidence. While much has been said recently concerning the value of our dollar, this Court will still take judicial notice that it has value. However, judicial notice is not required since money taken in a robbery need not be described and the term itself imports value. People v. Shipman, 414 Ill 393, 396, 111 NE2d 545 (1953); People v. Fiereto, 303 Ill 186, 189, 135 NE 417 (1922).

382

The defendant charges that there was no proof of the identity of Moriarity as the person who robbed the tavern and that there was not sufficient evidence to sustain his conviction, and absent such identity and evidence, he is not guilty as an impleaded defendant. All of the eye-witnesses, other than the defendant, identified Moriarity as the robber. This is hardly weak and unsatisfactory evidence, and in addition, a positive identification by one witness is sufficient for conviction. People v. Nicholson, 55 Ill App2d 361, 367, 204 NE2d 482 (2nd Dist 1965). We believe there was substantial evidence to sustain the defendant's conviction. The mere fact of conflict in the evidence does not establish a reasonable doubt. So long as there is credible and substantial evidence on which to base a verdict, it will not be set aside merely because there was other evidence which, if believed, would have resulted in a different verdict. People v. Kelly, 8 Ill2d 604, 615, 136 NE2d 785 (1956).

Finally the defendant urges that we reduce the sentence of five to fifteen years imposed by the trial court. He concedes that this is within the limits fixed by the statute but argues, in effect, that since the defendant was not guilty, the punishment is disproportionate to the offense shown by the evidence. Were we to share the defendant's view of his guilt, we would have to agree with the logic of his argument. However, the jury found him guilty—a finding not inconsistent with the evidence. The nature of the offense, as well as the prior criminal record of the defendant, are matters to be considered in imposing sentence. We do not find that the sentence was unwarranted, as disproportionate to the offense shown, or that it was the result of bias, prejudice or the abuse of discretion.

Notwithstanding certain bickering and wrangling between the trial court and defense counsel,

we believe that the jury reached a proper verdict and that the defendant had a fair trial. We cannot say that the result would have been different without the trial irregularities. When the error complained of could not reasonably have affected the verdict, the judgment should be affirmed. The question is not whether the record is perfect, but whether the defendant has had a fair trial and whether his conviction is based on evidence establishing his guilt beyond a reasonable doubt. People v. Sleezer, supra, 62. The jurors determined that the evidence established defendant's guilt beyond a reasonable doubt and we find no basis for disturbing their finding. People v. Solomon, 24 Ill2d 586, 591, 182 NE2d 736 (1962). Accordingly, the judgment should be affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.