The People of the State of Illinois, Plaintiff-Appellee, *v.* James Edward Saunders, Defendant-Appellant.

(No. 53596;

First District—March 18, 1971.

Gerald W. Getty, Public Defender, of Chicago, (James J. Doherty, Assistant Public Defender, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago (Michael J. Goldstein and Robert A. Novelle, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

James Saunders was indicted for burglary "in that he, without authority, knowingly entered into the dwelling house of Clara Perkins, with the intent to commit the crime of theft  *  *  *  ." He was found guilty by a jury and was sentenced to the penitentiary for a term of not less than five or more than fifteen years.

Saunders contends that the State did not prove that Clara Perkins was in lawful possession of the burglarized premises and did not prove that the person who entered the premises intended to commit theft. Saunders also complains of two trial errors: that the prosecutor insinuated that he had made prior statements inconsistent with his testimony but did not present proof of these statements; and that a letter and a photograph were admitted into evidence despite their not being disclosed by the State pursuant to his motion for the inspection of all physical evidence.

Mrs. Perkins, her daughter, sister, and a three-year-old nephew, occupied an apartment on South Michigan Avenue, Chicago. In mid-morning in January 1968, she and her sister left the boy, who was asleep, alone in the apartment. When they returned a half-hour later policemen were in front of their home. After the officers spoke to her, she went inside and discovered that a camera and portable television set were missing. She was then taken to the officers' squad car where she saw Saunders and the missing articles.

On the same morning, Henrietta Goodwin, who lived on the opposite side of Michigan Avenue, heard a child crying. She went to a window and saw a small boy standing on the stairs leading to the outside door of an apartment on the west side of the street. A moment later she saw a man take the child by the hand, go up the steps and into the apartment. Mrs. Goodwin was preparing to go to work; she left her home, crossed the street and waited for a south-bound bus. As the bus approached, she saw the same man—the defendant Saunders—walk out of the apartment carrying a television set and a camera. He was about forty feet from her and she watched him walk down the street and turn east. She boarded the bus, rode a short distance, got off and, while the bus waited, informed two police officers seated in a squad car of

what she had seen. She gave them Saunders' description and told them where he was walking.

The officers sped to the scene, saw Saunders and stopped him. He had a camera and a television set in his hands. He was put in the squad car, taken to Mrs. Perkins' home and placed under arrest when she identified the stolen articles.

At his trial, Saunders denied taking the articles from Mrs. Perkins' home. He testified that he acquired them as collateral for a twenty-dollar loan made to a man named Lee Jones, whom he met on the street. Jones, he said, was on his way to pawn the television set and camera but, instead, borrowed the money from him and gave him the articles as security. Saunders' credibility was impeached by evidence of two prior convictions for robbery.

■■■ To sustain a burglary conviction it is only necessary for the State to plead and prove occupancy or possession of burglarized premises in a named party whose occupancy or possession is rightful as against the alleged burglar. It is not necessary to prove ownership of, or precise legal title in, the premises. (*People v. Whittaker* (1970), 45 Ill.2d 491, 259 N.E.2d 787; *People v. Knox* (1968), 98 Ill.App.2d 270, 240 N.E.2d 426.) The indictment charged that Saunders entered the dwelling house of Clara Perkins. The State's evidence showed that Mrs. Perkins occupied the apartment and that the man who entered the apartment did so without her knowledge or consent. This was sufficient to sustain the burglary charge.

■■■ The defendant admits that the evidence was adequate to establish theft but contends that it was inadequate to establish burglary. The intent to commit a felony or a theft on the part of a person who knowingly enters into or remains within a building without authority is an essential element of the crime of burglary. (Ill. Rev. Stat. 1967, ch. 38, par. 19—1.) It is argued that the State did not prove that the person who entered Mrs. Perkins' apartment intended to steal her property; that the person did an act of kindness in taking the child out of the cold and that he may have observed the camera and television set lying in plain view, succumbed to temptation and formed the intent to take them at that time. Returning the child to its home was an act of kindness; going inside without authority and remaining there was not. In burglary cases, intent is seldom proved by direct testimony; it must be inferred from the circumstances surrounding the offense. Whether the required intent is proven is a question for the trier of fact. The evidence was such that the jury could have concluded that when Saunders saw the unattended child outside an open door he surmised that no one might be

at home, and when he found this to be true he decided to take advantage of the situation.

■■■ The first alleged trial error arose after the defendant testified that he received the camera and the television set from Lee Jones. The prosecutor questioned him as follows:

"Q. Have you ever told anyone prior to today's date that Mr. Lee Ernest Jones gave you this camera as collateral for a loan?

A. Yes.

Q. Did you tell that at the preliminary hearing * * * ?

* * *

The Court: What is your answer?

A. I don't recall."

The State concluded its case without proving that the defendant testified at the preliminary hearing and without proving what he said if he did testify. The absence of proof was aggravated by the prosecutor asking the jury in his closing argument this rhetorical question: "* * * has the defendant, in any other judicial proceeding, outside of court or in court, told the same logical story before?" The jury was instructed to disregard this statement. The questions of the prosecutor intimated that Saunders told a different story at the trial than he had at the preliminary hearing. This substituted innuendo for proof and was improper. (*People v. Payton* (1967), 82 Ill.App.2d 51, 227 N.E.2d 87.) Once the foundation for impeachment has been laid it is incumbent upon the interrogator to offer proof of the conflicting statements. It is competent to introduce statements at variance with a witness' testimony if he answers that he does not recall making them (*People v. Preston* (1930), 341 Ill. 407, 173 N.E. 383), and it was error for the State to attempt to impeach the defendant without offering proof of his testimony at the preliminary hearing. However, a failure to follow through is not always reversible error, (*People v. Williams* (1969), 105 Ill.App.2d 25, 245 N.E.2d 17; *People v. Snell* (1966), 7 Ill.App.2d 12, 219 N.E.2d 554), and it was not in this case. The evidence of Saunders' guilt was overwhelming. His possession of the stolen articles minutes after he was seen carrying them out of Mrs. Perkins' apartment, effectively belied his story that he had received them from another man.

The conclusive evidence of guilt also mitigates the effect of the remaining trial errors which the defendant asserts were prejudicial. One of these was the introduction into evidence of a photograph of Lee Jones and the other was the introduction of a letter written by the defendant to Mrs. Perkins. A motion for the inspection of all physical evidence was allowed prior to trial but the State did not submit either of these items

to the defense. The defendant specifically moved to inspect the letter. The State announced that it did not intend to use the letter in its case-in-chief and the court reserved its ruling on this item. At the trial both items were admitted into evidence over the defendant's objections.

Jones was not available for the trial and on rebuttal the State recalled Mrs. Goodwin to the stand and showed her his picture. She testified that the man in the picture was not the man she had seen leaving Mrs. Perkins' apartment.

The letter was introduced into evidence by the State during its cross-examination of the defendant. The letter was one of five Saunders sent to Mrs. Perkins from the county jail (three were returned unopened) and was in part as follows:

"Mrs. Perkins, I am truly sorry and unfortunately all I can do at this time is to apologize to you and beg your forgiveness and hope that this and my promise to you to benefit from the mistake that I made will rectify everything."

The letter concluded with a plea to give him a chance and not to let the police encourage her to send him away.

■■ The State justifies withholding the exhibits from inspection on the ground that they were used only in rebuttal. The State argues that it could not presume that the defendant would testify and could not anticipate what his defense would be; that prior to his testifying neither the photograph nor letter was admissible to prove guilt; that they became relevant only after he testified and were then used to repel and contradict his testimony. This argument while theoretically persuasive is not convincing under the facts of this case. (*Cf. People v. Richards* (1970), 120 Ill.App.2d 313, 256 N.E.2d 475.) The State knew before the trial that Saunders had implicated Jones and it was reasonable to expect that he would do so again. According to the testimony given by the police during the hearing on the defendant's motion to suppress evidence which preceded the trial, Saunders gave three explanations for possessing the camera and the portable television set. When he was first confronted by the police he said he was helping his sister move; when he was placed in the squad car he said he bought them from a man named Scoonscane; later he said he obtained them from Jones. An officer related Saunders' statement about Jones to the grand jury and on the basis of his testimony Jones was indicted. From these circumstances the State was aware that Jones' name would likely be injected into the case and it prepared for this probability by securing his picture. The picture was without relevancy until Jones testified, but it was physical evidence and the State should have shown it to the defense in compliance with the court's order. It is difficult to see, however, how the defendant

was prejudiced by not seeing the picture in advance of trial and it cannot be said that the trial judge abused his discretion in not excluding the exhibit.

■■ The same can be said about the letter. However, unlike the picture the letter could have been used as part of the State's case. The letter was admissible as an admission against interest and was as relevant on direct proof as it was in rebuttal. The fact that the State's Attorney chose not to use it in his case-in-chief did not make it rebuttable evidence immune to discovery. The refusal to permit discovery, however, was harmless. It appears from the record that Saunders had an excellent recollection of the contents of the letter and was in no way hindered in the preparation of his defense by not seeing it again in advance of trial. Furthermore, he had no clear right to inspect the letter. The Code of Criminal Procedure provides that a copy of a confession must be furnished the defendant (Ill. Rev. Stat. 1967, ch. 38, par. 114—10) but there is no such provision for an admission against interest. A confession is a voluntary acknowledgment of guilt; an admission is a statement made by the accused from which guilt may be inferred but from which guilt does not necessarily follow. (*People v. Stanton* (1959), 16 Ill.2d 459, 158 N.E.2d 47.) The drafters of section 114—10 of the Code of Criminal Procedure of 1963 included admissions in the original draft of the proposal pertaining to confessions, but this was stricken before submission to the legislature because it was thought that this provision would impose "too great a burden on the State due to the difficulty sometimes in distinguishing an admission and a confession * * * ." S.H.A., 1963, ch. 38, § 114—10; see also *People v. Marshall* (1966), 74 Ill.App.2d 472, 221 N.E.2d 128.

■■■ Even confessions erroneously admitted into evidence do not necessitate the reversal of a conviction where the evidence of the defendant's guilt is otherwise established. (*People v. Pelkola* (1960), 19 Ill.2d 156, 166 N.E.2d 54.) Not permitting inspection of physical evidence is harmless error where the evidence of the defendant's guilt is not a close question. (*People v. Tribbett* (1968), 41 Ill.2d 267, 242 N.E.2d 249.) Similarly, the refusal to permit inspection of a written admission is not necessarily reversible error where, as here, other evidence establishes the defendant's guilt beyond reasonable doubt.

The judgment of conviction will be affirmed.

Judgment affirmed.

McNAMARA, P. J., and SCHWARTZ, J., concur.