THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD KURZYDLO, Defendant-Appellant.

(No. 59329;

First District (3rd Division)—October 17, 1974.

*Rehearing denied November 26, 1974.*

James J. Doherty, Public Defender, of Chicago (Anthony Pinelli, Thomas Lipscomb and John M. Kalnins, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Alan L. Fulkerson, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendant, Richard Kurzydlo, together with Jerome Cehoda and Frank Wilk, was indicted for robbery. Cehoda and Wilk pleaded guilty and defendant was found guilty by a jury. Defendant was sentenced to the State penitentiary for a term of 6 to 18 years.

On appeal, defendant contends that he was denied a fair jury trial in that (I) the prosecutor in closing argument (a) emphasized defendant's failure to call alibi witnesses when no alibi defense had been presented, and (b) misstated defendant's testimony concerning his actions at the time of the offense; and (II) that the court erred in giving an instruction as to an admission. No challenge is made to the sufficiency of the evidence.

The indictment charged that defendant, Cehoda and Wilk, on October 13, 1971, by the use of force and threat of force took money and cartons of cigarettes from one Douglas Thomas while he was employed as an attendant at a Clark gas station located at 7151 South Western Avenue in Chicago. Cehoda and Wilk appeared as witnesses for the prosecution. The pertinent facts follow.

Jerome Cehoda testified that he, defendant, defendant's sister, Wilk, and Nancy Skelton went to the Clark gas station at about 10:30 P.M., on October 13, 1971. There they met defendant's girl friend, Valerie

Scott, and a man known only as Manuel. Following a quarrel with Valerie, defendant left to walk her home about 10 or 15 minutes after they had arrived, and returned alone some 5 minutes later. Prior to the robbery, defendant gave money to his sister and Nancy to take a taxi, and they left for home. While the attendant was outside, defendant asked Cehoda, Wilk and Manuel to help rob the attendant, and they agreed. Cehoda testified that the robbery occurred an hour and a half or 2 hours after they had arrived. When the attendant came back into the station after servicing a car, they had their plan set. Manuel approached the attendant with $5 and asked to purchase a carton of cigarettes which were kept in a locked room. As soon as the attendant opened the door, defendant, Cehoda and Manuel pushed him into the room. Manuel threatened him with a rake to his face while Cehoda went through his "top pockets" and defendant through his "bottom pockets." Manuel grabbed some cigarettes. They locked the attendant in the room and fled to a nearby railroad where they divided the money and cigarettes.

Douglas Thomas, the attendant, testified that he was robbed at about 12:20 A.M., by the four people who had been at the station for an hour and a half or 2 hours. His testimony was substantially the same as that of Cehoda. Thomas stated that he had seen defendant previously but did not know his name. He identified him as the offender who went through his pants pockets. In addition to the cigarettes, about $150 was taken from his person. He identified defendant from a group of 30 to 35 photographs at a police station, and also at a lineup.

Defendant testified that he arrived at the gas station at about 10 P.M., but left soon after to walk his girl friend home. Upon his return 5 or 10 minutes later, he observed Cehoda, Wilk and Manuel forcing the attendant into the back room of the station. Defendant testified that he turned and left the station because he did not want any part of it. He did not call the police but took a bus to his home. He stated that he arrived home about 11 P.M., and remained there the rest of the night with his mother, father and sister. He denied any participation in the robbery in any manner.

Frank Wilk testified for the State on rebuttal. He testified that after defendant returned to the gas station, defendant proposed to him that they rob the attendant. He first refused, but later defendant told him all he had to do was to stand watch at the door, to which he agreed. He stated the robbery occurred at about 12:15 A.M., and that he stood at the front door while defendant, Cehoda and Manuel forced the attendant into the back room. He saw defendant give Manuel $5 and heard him tell Cehoda and Manuel that the only way to get into the storeroom was to ask for a carton of cigarettes. After the three came out and locked the

attendant in the storeroom, they ran to the tracks and divided the money. He went home about 1:30 or 2 A.M.

During cross-examination by defendant's counsel as to why he pleaded guilty, Wilk testified:

> "No. Like when he got picked up, like when he got brought down to the [police] station Richie was there and like he said you don't got nothing to worry about. They ain't got nothing. They ain't got nothing. So say you don't know nothing about it and we will beat the case in court."

Based on the quoted statement by Wilk, People's Instruction No. 8, IPI—Criminal No. 3.06, was given, which read:

> "You have before you evidence that the defendant made an admission of a fact or facts relating to the crime charged in the indictment. It is for you to determine whether the defendant made the admission, and if so, what weight should be given to the admission. In determining the weight to be given to an admission, you should consider all of the circumstances under which it was made."

During closing arguments, the prosecutor in rebuttal told the jury:

> "Mr. Kurzydlo's lawyer has told you that it is difficult for a man who is charged with a crime and is charged with participating in the crime to prove that he did not participate and to call witnesses to prove that he was not there. Why is it so difficult? He has the ability to call witnesses just as I do. You heard him testify he was home with his mother, father and sister when this crime was committed. The defendant testified. What was so difficult to produce other witnesses. What was so difficult in having your mother, your father or your sister come into court to testify."

Defendant made no objection to the prosecutor's statement at trial.

## I.

Defendant contends that statements made by the prosecutor in closing arguments denied him a fair jury trial although in neither instance urged on appeal was any objection raised at trial. Although we have some reservations as to their propriety, it is unnecessary to reach the merits of defendant's contentions concerning the remarks made. The rule is well established that the failure to object to allegedly improper closing argument waives any error therein for purposes of appeal. (*People v. Moore* (1973), 55 Ill.2d 570, 304 N.E.2d 622; *People v. Skorusa* (1973), 55 Ill.2d 577, 304 N.E.2d 630; *People v. Nuccio* (1973), 54 Ill.2d 39, 294 N.E.2d 276; *People v. Arnold* (1974), 17 Ill.App.3d 1043, 309 N.E.2d 89.) Furthermore, the closing remarks of the prosecutor do not

rise to the level of plain error under Supreme Court Rule 615(a). (Ill. Rev. Stat. 1973, ch. 110A, par. 615(a).) Defendant has not challenged the sufficiency of the evidence to establish his guilt. Moreover, a review of the record in the instant case leads to the conclusion that the verdict which was returned was the only reasonable one which could have been reached on the basis of the evidence presented. While complaint of serious prejudicial argument may be considered on appeal, even though no objection was made at trial, in order to be so recognized the allegedly improper argument must have played a significant factor in the jury's determination. (*People v. Moore, supra; People v. George* (1971), 49 Ill.2d 372, 274 N.E.2d 26.) Upon the record herein, the statements of the prosecutor were not of such serious character to be a material factor in the defendant's conviction, nor were they of such probable prejudice to require reversal.

## II.

Defendant further contends that People's Instruction No. 8 as to admissions was improperly given to the jury because the statement of defendant upon which it was based did not constitute a viable admission. Defendant first argues that since his exercise of the privilege to remain silent could not be used against him under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, the State could not equate defendant's request to his co-defendant Wilk to remain silent to exercise that right with an admission implying defendant's guilt. Defendant further argues that his statement to Wilk at the police station was not an admission in that it did not carry the necessary implication of guilt, and that the statement is at most only an expression of defendant's belief that the charges against him and the others could not be proved.

■■ We reject defendant's first argument. The privilege against self-incrimination is a personal right which cannot be invoked by or for a third party. (*Hale v. Henkel* (1906), 201 U.S. 43, 50 L.Ed. 652.) Furthermore, the protection afforded by *Miranda* does not encompass statements made to a private individual, as distinguished from a law enforcement official, even after an accused is in custody or otherwise significantly deprived of his freedom. *People v. Morehead* (1970), 45 Ill.2d 326, 259 N.E.2d 8.

■■ We now consider defendant's second argument. An admission is a statement by an accused of fact or facts which, when taken in connection with proof of other facts, may lead to an inference of guilt of the crime charged, but from which guilt does not necessarily follow. (*People v. Stanton* (1959), 16 Ill.2d 459, 158 N.E.2d 47; *People v. Hobbs* (1948), 400 Ill. 143, 79 N.E.2d 202; *People v. Saunders* (1971), 132 Ill.App.2d

421, 270 N.E.2d 217.) However, there must be sufficient evidence in the record to support an instruction lest the jury be confused by issues improperly before it. (*People v. Bernette* (1970), 45 Ill.2d 227, 258 N.E.2d 793, *rev'd on other grounds*, 403 U.S. 947, 29 L.Ed.2d 858, 91 S.Ct. 2290, 2291.) "It is the danger that the jury may be misled into believing that in the opinion of the court the evidence would support a finding that the facts exist upon which the proposition of law is based. (*People v. Corbishly*, 327 Ill. 312.)" *People v. Banks* (1962), 26 Ill.2d 259.

In the instant case, defendant's statement, "You don't got nothing to worry about, they ain't got nothing. So say you don't know nothing and we will beat the case in court" does not constitute an admission which would lead to an inference of guilt. Defendant, as well as Wilk, had a right to remain silent. The statement appears to be an expression of defendant's belief that the charges against them could not be proved. We conclude that the trial court erred in giving People's Instruction No. 8 to the jury.

■■ However, a reversal is not warranted in this case. Where an improper instruction is given to a jury, reversal is inappropriate unless it can be said that a defendant was so prejudiced by the instruction as to affect the outcome of the verdict. (*People v. Stewart* (1970), 46 Ill.2d 125, 262 N.E.2d 911; *People v. Parks* (1971), 133 Ill.App.2d 348, 273 N.E.2d 162.) The giving of the instant instruction was harmless error which does not justify reversal since the evidence of guilt is so clear and convincing. (*People v. Haygood* (1965), 60 Ill.App.2d 70, 208 N.E.2d 373.) We have already stated that the jury returned the only reasonable verdict which could have been reached from the evidence presented. The instruction could not have affected the outcome at trial.

Judgment affirmed.

McNAMARA, P. J., and McGLOON, J., concur.