THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PATRICIA CLARK, Defendant-Appellant.

(No. 59158;

First District (1st Division)—October 6, 1975.

James J. Doherty, Public Defender, of Chicago (Frances Sowa and Donald Honchell, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, and Raymond J. Prosser, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

Patricia Clark, defendant, was charged by indictment with one count of attempt murder and three counts of aggravated battery. After a jury trial, she was found guilty of two counts of aggravated battery. She was sentenced to a term of 3 to 5 years on each charge, the sentences to run concurrently. Defendant appeals, arguing (1) that the evidence was insufficient to establish her guilt beyond a reasonable doubt, (2) that she was prejudiced by the trial court's action in refusing defense counsel's request to testify, (3) that the trial court improperly instructed the jury on the law regarding admissions, and (4) that the trial court erred in sentencing her on both counts of aggravated battery.

Jerry McCarty testified that on April 1, 1972, between 9 and 9:30 p.m., he arrived at the Pretty Girl Lounge located at 1340 West Madison Street, Chicago, Illinois. While in the lounge, he met the defendant, who was there with Cleo Brewer. He had dated the defendant for 2 or 3 months previously. He offered to buy defendant a drink but she refused at that time. McCarty testified that later the defendant came over to his table and he bought her a drink. At approximately 2:30 a.m., McCarty left the lounge with Walter Mickles, Betty Mickles and Ernest Armer. Outside the lounge, he saw Henry Scott fighting with Cleo Brewer. The defendant came out of the tavern and McCarty began arguing with her about the man she was with. Defendant began to call McCarty various names and McCarty pushed her to the ground. Defendant then picked up a knife and started toward McCarty, but was restrained by her sister. A short time later, after McCarty had gotten into his car, the defendant walked over to his car with a gun in her hand and began to fire at him. After several shots, McCarty got out of his car. He remembered feeling a pain in his back but nothing else until waking up in a hospital, where he remained for approximately 2 months with his left side paralyzed. He suffered a bullet wound in his head and back.

Andrew Watson testified that at approximately 2:30 a.m. on the morning of April 2, 1972, he was leaving the Pretty Girl Lounge when he observed Henry Scott and Cleo Brewer fighting. Jerry McCarty and the defendant attempted to break up the fight, but were unsuccessful. The defendant and McCarty then began to argue and McCarty pushed the defendant to the ground. Watson and Ernest Armer grabbed McCarty

and pulled him back. Defendant grabbed a knife and started to come at McCarty but was stopped by her sister. After McCarty got into his car, Watson heard the defendant tell her sister, "Give me the thing." Approximately 5 minutes later, Watson heard four or five shots. He saw McCarty fall to the ground. The defendant ran from the scene with a gun in her hand.

Betty Mickles testified that she and her husband arrived at the Pretty Girl Lounge at 10 p.m. Defendant and Cleo Brewer were there. Jerry McCarty was there, seated near the front door. Between 2:30 and 3 a.m., Mrs. Mickles and her husband left. McCarty offered them a ride and they got into his car. At that time she saw the defendant trying to break up a fight between Henry Scott and Cleo Brewer. McCarty got out of his car and went to attempt to stop the fight. Mrs. Mickles also got out of the car and walked down the street. She saw McCarty strike the defendant, and the defendant fall to the ground. Two men grabbed McCarty and took him back to his car. The defendant grabbed a knife and attempted to go after McCarty, but was stopped by her sister. McCarty got back into his car. A short time later the defendant walked across the street with a gun and fired at McCarty. After the defendant fired the first shot, McCarty started to get out of the car and defendant fired several more times. After firing approximately five shots, the defendant turned and ran down the street. Walter Mickles also testified and corroborated the details of his wife's testimony.

Cleo Brewer testified that she and the defendant arrived at the lounge about 11 p.m. At 2:45 a.m. she left the lounge with Henry Scott. They began arguing, Scott slapped her and a fight started. Ms. Brewer testified that as she got to Jerry McCarty's car she was crying. Ms. Brewer returned to the area of the lounge while Scott went to look for an earring and the heel of her shoe which she had lost in the fight. She then heard shots and saw the defendant walking toward McCarty's car. She heard several more shots and saw the defendant running down the street.

Ms. Brewer also testified that in September 1972 she discussed the incident with the defendant. The defendant stated that if she hadn't been intoxicated she probably would not have done what she did and that she was sorry.

Thomas Bloomstand, a Chicago police investigator, testified that after investigating the incident he obtained a warrant for the defendant's arrest and notified her family of this fact. On April 5, 1972, the defendant surrendered herself to the police. Investigator Bloomstand testified that to his knowledge the defendant did not surrender herself pursuant to any previous arrangement.

Barbara Jean Terrall, the sister of the defendant, testified that she

had been at the Pretty Girl Lounge at the time of the shooting. As she left the lounge, she saw Cleo Brewer and Scott fighting. Defendant attempted to stop the fight, but was unable to do so. McCarty told the defendant that she did not have anything to do with the fight. The defendant turned away but McCarty approached her from the rear, grabbed her by the coat collar and began to strike her until she fell down. Several men restrained McCarty while defendant picked up the items that had fallen out of her purse. McCarty started to get back into his car when the defendant asked him why he had struck her. McCarty said, "Bitch, I'll kill you." McCarty started to walk toward the defendant, who began backing away from him. Defendant fired several shots and then ran down the street. Ms. Terrall stated that the defendant did not at any time have a knife in her possession. Ms. Terrall stated that at the time of the shooting she was only 20 to 30 feet away from McCarty.

Defendant testified that she arrived at the Pretty Girl Lounge on April 2, 1972, at approximately 1:15 a.m. in the company of her sister and Cleo Brewer. McCarty asked her if he could buy her a drink and she refused. Defendant denied McCarty was ever her boyfriend. Between 2:30 and 2:45 a.m., she left the lounge with her sister. She saw Scott hitting Cleo Brewer and attempted to break up the fight. McCarty approached and told her that it was none of her business. Defendant turned and began to cross the street, when McCarty shouted to her. As she turned, McCarty grabbed her and knocked her to the ground. Defendant gathered her belongings which had fallen out of her purse and then asked McCarty why he had struck her. McCarty laughed and walked toward his car. Defendant testified that she had a gun in her hand that had fallen from her purse. Defendant stated that McCarty started to walk back towards her in a threatening manner. She jumped back and the gun went off. The defendant testified that McCarty kept approaching and she fired several more shots without aiming. She then fled the scene. Defendant stated that pursuant to negotiations by her attorney, she surrendered herself to the police on April 5, 1972.

In rebuttal, the State recalled Cleo Brewer, who testified that McCarty and the defendant had dated during the month of April and had gone to a movie the Friday before the shooting.

Investigator Bloomstand testified that he spoke to Barbara Terrall on April 2, 1972, and she told him that she saw McCarty arguing with her sister as Ms. Terrall came out of the lounge. She thought there might be trouble so she ran down the street to find a police car. Ms. Terrall told him that when she heard gunshots, she turned and saw Jerry McCarty lying on the street. She told him that she did not see what occurred before the shooting.

Richard Rochowicz, a Chicago police investigator, testified that on April 5, 1972, shortly after midnight, the defendant surrendered herself at Area 4 Homicide Headquarters. Officer Rochowicz testified that to his knowledge there was no prior arrangement for the defendant to surrender herself, but that he was not aware of all the conversations which other officers may have had regarding this case.

In a police report, a portion of which was read to the jury, Investigator Rochowicz stated that he spoke to Watson on the night of the incident and Watson told him that he was inside the lounge when he heard a series of shots. He ran outside and saw McCarty lying on the ground. After being reinterviewed and told the substance of other witnesses' statements to the police, Watson made a written statement in which he stated he was an eyewitness to the occurrence. This second statement was in substance the same as the other witnesses.

■■ Defendant's first contention is that the evidence was insufficient to establish her guilt beyond a reasonable doubt because she was acting in self-defense. The only evidence introduced that would justify the shooting under the law of self-defense was the testimony of the defendant and her sister. Their version of the shooting was directly contradicted by the testimony of five State's witnesses, McCarty, Watson, Mr. and Mrs. Mickles and Cleo Brewer.

While the defendant now argues that her testimony and that of her sister was sufficient to create a reasonable doubt as to her guilt, the question of whether a shooting is justified under the law of self-defense is a question of fact which is for the jury to determine. (*People v. Meeks* (1973), 11 Ill.App.3d 973, 297 N.E.2d 705.) The defendant's version of the shooting, that the gun went off accidentally and that she then fired repeatedly at McCarty without aiming as he walked towards her, is directly contradicted by the testimony of each of the State's witnesses, as well as the physical evidence that McCarty was shot in the back. This evidence was sufficient to support the State's burden of proof beyond a reasonable doubt, that the shooting was intentional and not done in self-defense. The jury chose to believe the State's version of the shooting. We cannot say that the evidence is so unreasonable, improper and unsatisfactory as to require reversal of that finding. *People v. Kendricks* (1972), 4 Ill.App.3d 1029, 283 N.E.2d 273.

Defendant's next contention is that the trial court prejudiced her by denying defense counsel's request to testify as to the circumstances surrounding the defendant's arrest. The defendant had testified that she had turned herself in after speaking to her lawyer. Officer Bloomstand testified earlier that Ms. Clark voluntarily surrendered herself at the police department but he did not know if there were negotiations for surrender.

Officer Rochowicz testified that the defendant entered the police station about midnight on April 5 and was then arrested. He stated that to his knowledge the defendant's surrender was not pre-arranged between her attorney and the police. During cross-examination, he stated that he was not aware of any conversations which other police officers may have had regarding this case. Defense counsel then asked if he could be sworn as a witness in surrebuttal to contradict Officer Rochowicz's testimony that defendant's surrender was not pre-arranged. The trial judge informed defense counsel that if he were to testify he would have to withdraw from the case and allow cocounsel to finish the trial. The trial court suggested that defense counsel in his closing argument could draw inferences from the testimony which had already been adduced.

■■ Defendant now argues that the trial judge erroneously applied the law when he refused defense counsel's request to be sworn as a witness. Even if we were to accept the defendant's argument, the defense was not prejudiced. No one ever contradicted the fact that the defendant voluntarily surrendered herself to the police. Officer Rochowicz' testimony was only that he did not know of any prior arrangements for her surrender. The fact that defendant voluntarily surrendered herself to the police was never disputed and if any confusion existed it was clarified in the closing argument of the defense. Whether the defendant's surrender was pursuant to negotiations was a minor issue in the trial and could not possibly have affected the outcome. Under these circumstances, the trial judge's action did not result in any substantial prejudice to the defendant and does not constitute reversible error.

■■ Defendant's next contention is that the trial court erred in instructing the jury on the law regarding admissions. At trial, Cleo Brewer testified that 5 months after the occurrence the defendant told her that if she had not been intoxicated on that night she probably would not have done it and that she was sorry. Defendant argues that this is not legally an admission and that the trial judge therefore improperly instructed the jury.

An admission is a statement by an accused of a fact or facts which, when taken in conjunction with proof of other facts, may lead to an inference of guilt for the crime charged, but from which guilt does not necessarily follow. (*People v. Stanton* (1959), 16 Ill.2d 459, 158 N.E.2d 47; *People v. Saunders* (1971), 132 Ill.App.2d 421, 270 N.E.2d 217.) There must be sufficient evidence in the record to support an instruction, lest the jury be confused by issues improperly before it. (*People v. Stillwell* (1974), 23 Ill.App.3d 796, 320 N.E.2d 120.) By her statement to Ms. Brewer, the defendant admitted that she shot McCarty and that she was drinking at the time. These facts, taken together with the testimony

932

of the State's witnesses, were sufficient to constitute evidence from which guilt of the crime could be inferred. Defendant's statement was, therefore, an admission, and the trial court did not err in so instructing the jury.

■■ Defendant's final contention is that she was improperly found guilty and sentenced on both counts of aggravated battery, since both charges arose out of the same course of conduct. Defendant was convicted of aggravated battery for committing a battery which resulted in great bodily harm and for committing a battery using a deadly weapon. (Ill. Rev. Stat. 1971, ch. 38, pars. 12—4(a) and 12—4(b)(1).) The State, in its brief, concedes that defendant's single act resulted in both crimes. We concur that defendant's single course of conduct resulted in her conviction on both charges of aggravated battery. Accordingly, defendant's conviction for aggravated battery, using a deadly weapon, must be vacated. *People v. Lilly* (1974), 56 Ill.2d 493, 309 N.E.2d 1.

For the foregoing reasons, the judgment of the circuit court of Cook County finding defendant guilty of aggravated battery in that she caused great bodily harm to Jerry McCarty is affirmed; the judgment of conviction on the charge of aggravated battery in that she used a deadly weapon is vacated.

Affirmed in part; vacated in part.

BURKE, P. J., and EGAN, J., concur.