THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LARRY FULTON, Defendant-Appellant.

First District (2nd Division)   No. 77-1347

Opinion filed February 6, 1979.—Rehearing denied March 6, 1979.

916

Ralph Ruebner and Daniel Cummings, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ellen Dienes, and Timothy D. McMahon, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Defendant was found guilty after a jury trial of murder, attempt murder, aggravated battery and armed robbery. (Ill. Rev. Stat. 1975, ch. 38, pars. 9—1, 8—4, 12—4 and 18—2.) Defendant was sentenced to concurrent prison terms of 100 to 300 years for murder, 25 to 100 years for attempt murder, and 10 to 40 years for armed robbery. Defendant appeals presenting the following issues for review: (1) whether the trial court erred in denying defendant's motion to quash his arrest and to suppress evidence; (2) whether the State was collaterally estopped from attempting to prove defendant's guilt on the theory of accountability because in a civil forfeiture proceeding the State did not present sufficient evidence to prove defendant's automobile had been used in commission of the offense; (3) whether the trial court erred in giving a jury instruction regarding accountability; (4) whether the trial court erred in giving a jury instruction regarding admissions; (5) whether the prosecution's closing argument improperly referred to defendant's failure to testify; and (6) whether defendant was proved guilty beyond a reasonable doubt of murder, armed robbery and attempt murder.

We affirm in part and reverse in part.

On March 19, 1975, a robbery took place at 123 North Wacker Drive during which Bernard DiMeo was shot, and Thomas Dolce was shot and killed. Defendant, Larry Fulton, was arrested on April 17, 1975, and charged with murder, attempt murder, aggravated battery and armed

robbery. Prior to trial defendant filed motions to quash his arrest, to suppress evidence, and to suppress a statement. The following testimony was adduced at the preliminary hearing on the motions.

Defendant testified that on April 17, 1975, at approximately 10:30 p.m., he was driving his 1968 green and black Cutlass in the area of 90th and Ellis in Chicago when two officers in plain clothes and driving an unmarked car stopped him. Defendant testified that he had pulled the car over and was about to get out and go to a friend's house when the police shined a light on him, pulled up behind him and told him to get out of the car. Defendant had committed no traffic violations, and the officers did not have a warrant. The officers flashed a badge but did not identify themselves. They told defendant he was under arrest, handcuffed him and took him to the police station at 91st and Cottage Grove. Defendant was then transferred to the station at 51st and Wentworth where he was fingerprinted and placed in a lineup.

Officer Francis Kehoe testified that he and his partner, John Kennedy, were investigating a robbery and shooting which had occurred on March 19, 1975, at the Gunthorp-Warren Corporation at 123 North Wacker Drive in Chicago. On April 16, 1975, the officers were working in plain clothes, in an unmarked car, and had under surveillance a house at 8917 South Greenwood, which was the home of Donald Howard. The officers had information that Howard, an employee of Gunthorp-Warren, was seen talking to two of the suspects involved in the incident, that a green and black 1968 Cutlass was used as the getaway vehicle, that Howard had access to a 1968 Cutlass through his girl friend, and that the owner of the Cutlass was named Larry.

Officer Kehoe testified that at approximately 11 p.m. he and his partner observed a 1968 green and black Cutlass driving north about one block from Howard's home. They followed the car for a few blocks and then the driver stopped the automobile and got out. The officers approached the driver, whom Officer Kehoe identified in court as defendant. They identified themselves and asked defendant's name. Defendant replied and stated that he owned the car and was going to his girl friend's house, but he would not say exactly where she lived. The officers told defendant they were investigating a murder in which a car matching that of defendant's was used. Defendant denied any knowledge but agreed to accompany the officers to the police station. Officer Kehoe stated that they did not have their guns drawn, that he read defendant his rights and defendant stated that he understood and that defendant sat in the back seat of the squad car but was not handcuffed. When they arrived at Area Two Headquarters at 91st and Cottage Grove, they went to the interview room and Officer Kennedy again advised defendant of his rights, and defendant stated that he understood. Defendant first denied

any involvement in the crime, but he then gave an oral statement. Defendant was transferred to Area One Headquarters where Officer Kennedy took a written statement from defendant in which defendant stated that he drove his car but did not know anything about the crime. Officer Kehoe testified that defendant was not charged with murder after he gave the statement, but rather defendant was considered as a witness. While at Area One the officers initiated a name check on defendant and learned that there was an outstanding bond forfeiture warrant on defendant. Defendant was then arrested and placed in a lineup. After the lineup, defendant was charged with murder.

Officer Kehoe testified that defendant was first approached on the street approximately 11 miles from the scene of the crime. The officers did not see any traffic violations, did not know who was in the car and were not looking specifically for defendant, and they did not have a license plate number or registration for the vehicle. Defendant's car was left on the street and was later towed by police.

Officer Kennedy's testimony was substantially the same as that of Officer Kehoe.

The court denied defendant's motions to quash the arrest and to suppress evidence. The court held that given all the knowledge acquired during their investigation and given the description of the car and the proximity of the car to the address, the police acted reasonably in approaching defendant and making initial inquiries. The court found that a question existed as to when the arrest occurred but that probable cause for arrest did exist.

The following testimony was adduced at trial: Bernard DiMeo testified that he was employed at Gunthorp-Warren at 123 North Wacker Drive for approximately 23 years. On March 19, 1975, he started work at noon. Shortly after noon he left the building and went to the Hartford Plaza Bank to cash some checks for his fellow employees. DiMeo was in the habit for the past two years of cashing paychecks for employees on pay day, which was Wednesday. As DiMeo left the building on March 19, 1975, he met Thomas Dolce, and Dolce accompanied him to the bank. DiMeo cashed the checks and put the money, approximately $5500 in coin and currency, in a blue envelope. DiMeo and Dolce went back to 123 Wacker, got on an elevator and went to the second floor. As DiMeo stepped off the elevator a person, whom he identified in court as defendant, confronted him with a small pistol, put his hand on DiMeo's chest and said, "I'll take that." Defendant grabbed the envelope, and as he did, DiMeo's right arm came up and hit defendant's hand which held the gun. DiMeo testified that defendant then started firing the gun and wounded DiMeo's right forearm. At this time Dolce, who was in the hallway, stated, "What's happening?" and defendant turned and fired five

shots at Dolce. DiMeo then "ducked," and he heard footsteps going down the stairs. DiMeo testified that defendant was about arm's length away from him when defendant shot DiMeo and also when he shot Dolce. There had been another person in the hallway at the time, standing by the stairwell. The hallway had fluorescent lighting. DiMeo testified that the entire incident took "seconds, maybe minutes. Three or four minutes. * * * Maybe three minutes elapsed." DiMeo glanced at defendant's face two or three times when first confronted, trying to determine whether it was someone he knew. DiMeo glanced at defendant again when he grabbed the envelope and when he fired the shots at Dolce. DiMeo had testified at a hearing on May 2, 1975, that the incident took 15 seconds, and he observed defendant for a couple of seconds. DiMeo testified at trial that he saw defendant's trial attorney at that hearing but did not recall being questioned by him.

DiMeo testified at trial that on April 17, 1975, he viewed a lineup in which five men participated, and he identified defendant. DiMeo testified that at the time of the lineup he did not know that someone was under arrest. DiMeo had testified previously in a civil proceeding on December 24, 1975, that at the time of the lineup he knew someone had been arrested. DiMeo never gave a clothing description of defendant to the police and did not recall what defendant was wearing and whether defendant was clean-shaven at the time of the lineup. DiMeo knew Donald Howard from work and had cashed checks for Howard on one or two occasions.

James Mendenhall testified that on March 19, 1975, he was employed at Gunthorp-Warren as a freight elevator operator. At approximately 12:15 p.m. he was waiting on the first floor for a truck to be unloaded. Mendenhall heard a door open and saw two men coming in a hurry through the hallway. One man had a gun and told Mendenhall to stand back. The men went through the hallway to the loading dock and out to an alley. Mendenhall testified that it was too dark in the hallway to be able to recognize the men. All Mendenhall saw was the gun. Mendenhall also testified that he saw Donald Howard standing near a pay telephone in the vicinity of the loading dock.

Charles Davis testified that on March 19, 1975, he was employed as a car-hiker for Fran-Ran Parking which was approximately one block from 123 North Wacker. At approximately 12:15 p.m. he was near the intersection of Franklin and Randolph Streets, and he observed a 1968 Oldsmobile Cutlass, with a green body and a black vinyl top, come southbound on Franklin and park in a no-parking zone near Randolph Street. There was one person in the car. A few minutes later, two men came running from South Franklin and one beckoned for the Oldsmobile by waving his arms and saying, "Let's go man." The car crossed Randolph

Street, stopped and the two men got in the back seat. The car then sped away on Randolph. Davis did not observe the license plate and could not identify the individuals running.

Officer Bernard McInerney testified that on March 19, 1975, at approximately 12:15 or 12:30 p.m., he was called to 123 North Wacker. When he arrived, he spoke to some people in front of the building and sent a message over his radio in regards to a car that left the scene. McInerney then went to the second floor of the building and observed a man lying on the floor in the hallway and observed DiMeo in an office.

Officer Milton Valda testified that on March 19, 1975, at approximately 12:30 p.m. he was called to 123 North Wacker. When he arrived, he observed someone being put in an ambulance, but he could not see who it was. Valda then went to the second floor where he saw DiMeo, who seemed to be in a state of shock. Valda talked DiMeo into going to the hospital. Valda took DiMeo to Henrotin Hospital, and while there he observed Dolce in the emergency room. Valda then removed Dolce from the hospital to Cook County Morgue.

It was stipulated that Dr. Yuksel Konacki, coroner's physician at Cook County Morgue, performed an autopsy on the body of Thomas Dolce and observed two bullet wounds of entry nature, one on upper left abdomen and one on the right chest. Dr. Konacki concluded that the cause of death was bullet wounds. Dr. Konacki removed two bullets from the body and turned them over to the Chicago Police Department crime lab.

It was further stipulated that two bullet fragments were removed from the second floor hallway at 123 North Wacker and turned over to the crime lab. Sargeant Donald Smith, a firearms examiner, examined the bullets and fragments and found them to be .22 caliber. Smith determined that the two bullets and one fragment were fired from the same gun; the other fragment was unsuitable for comparison.

It was further stipulated that on March 19, 1975, and at the time of trial defendant was 24 years old.

Officer John Kennedy testified as to the events leading to defendant's arrest. The testimony is substantially the same as that given by Officers Kennedy and Kehoe at the preliminary hearing. Officer Kennedy also testified that defendant first denied any knowledge of the incident, but after being told that the police had knowledge of Howard's involvement, defendant stated that he loaned his car to Howard on that day. Officer Kennedy testified that upon further questioning, defendant gave an oral statement as follows: defendant had driven his car on the day of the robbery at Howard's request. Defendant had received a phone call from Howard telling him to pick up two men and drive them downtown so they could go to band practice. Defendant stated that he drove the two

men, whom he had never seen before, and parked at Franklin and Randolph. The two men got out and told defendant to wait. About 15 or 20 minutes later the two men came back, and he saw that one of them had a gun. Defendant drove away, and after a few blocks the men told him to stop. They got out, and he never saw them again. Later in the evening defendant saw Howard at a bar, and Howard told him that his car was "monkeyed."

Officer Kennedy testified that defendant was then taken to Area One Headquarters where he gave a written statement. The written statement was introduced into evidence and read to the jury. The written statement was substantially the same as Officer Kennedy's account of the oral statement given by defendant except that defendant stated that both men had pistols and one had a torn bag. Officer Kennedy testified that defendant was not arrested after he gave the statement; defendant was considered as a potential witness and was told he was a witness. Defendant was charged after DiMeo viewed a lineup and identified defendant as the shooter.

It was stipulated that Christine Dudek, a certified shorthand reporter, attended a hearing on a civil forfeiture before Judge Bakakos on December 24, 1975, in which Bernard DiMeo testified. It was further stipulated that on May 2, 1975, a preliminary hearing was held before Judge Pompey, that defendant's trial attorney was not present, but that the trial attorney was in court on December 24, 1975.

The jury found defendant guilty of the murder of Dolce, of attempt murder of DiMeo, of aggravated battery of DiMeo and of armed robbery. The court held that the aggravated battery conviction merged into the conviction for attempt murder. The court sentenced defendant to concurrent terms of 100 to 300 years for murder, 25 to 100 years for attempt murder and 10 to 40 years for armed robbery.

## I.

Defendant initially contends that the trial court erred in denying his motions to quash the arrest and suppress evidence because the police did not have grounds to stop defendant and did not have probable cause to arrest him.

■■■ An arrest is made by an actual restraint of the person or by his submission to custody. (Ill. Rev. Stat. 1975, ch. 38, par. 107—5(a).) An arrest involves three elements: authority to arrest, intention of the officer and the understanding of the arrestee, and restraint of the person. (*People v. Wipfler* (1977), 68 Ill. 2d 158, 368 N.E.2d 870.) The test of the arrestee's understanding is not what the arrestee subjectively thought, but what a reasonable person, innocent of any crime, would have thought had he been in defendant's shoes. (*Wipfler*.) There is a difference between an

arrest and the stopping of an individual for questioning as part of an investigation. In *Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868, the Supreme Court recognized that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. Section 107—14 of the Code of Criminal Procedure of 1963 is a codification of the holding in *Terry.* (Ill. Rev. Stat. 1975, ch. 38, par. 107—14; *People v. McGowan* (1977), 69 Ill. 2d 73, 77, 370 N.E.2d 537, *cert. denied* (1978), 435 U.S. 975, 56 L. Ed. 2d 69, 98 S. Ct. 1624.) Although probable cause is not necessary, the stop must be justified by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (392 U.S. 1, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868; see *People v. Garza* (1st Dist. 1976), 44 Ill. App. 3d 30, 33, 357 N.E.2d 1264, *appeal denied* (1978), 65 Ill. 2d 582.) The objective determination to be made is whether "the facts available to the officer at the moment of the seizure * * * 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" (392 A.S. 1, 21-22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868; *People v. Sanford* (2d Dist. 1976), 34 Ill. App. 3d 990, 993, 341 N.E.2d 453, *appeal denied* (1976), 63 Ill. 2d 554.) Each case involving a "stop" must be decided on its own facts. *People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681.

We believe that sufficient facts were known to officers Kehoe and Kennedy to justify stopping defendant. The officers had a description of the "getaway" vehicle and had knowledge that Howard had access to such a vehicle and that Howard's girl friend had a brother named Larry who drove a 1968 green and black Cutlass. Although defendant drove past Howard's house, the officers acted reasonably in approaching defendant when he stopped his car a few blocks away. The officers had been watching Howard's house for about three weeks, and April 16, 1975, was the first time they observed a car matching the description of the getaway vehicle near Howard's house. Although defendant drove past Howard's house, the officers acted reasonably in approaching defendant when he stopped his car a few blocks away. The officers did not have their guns drawn, and they did not conduct a pat down search of defendant or handcuff him. The officers made initial inquiries of defendant as to his name and where he was going and then requested defendant to accompany them and answer some questions. At the station there were none of the procedures which the public associates with an arrest, such as searching, booking and fingerprinting which might, to an innocent person, have negated the statement of the police that he was only going to be questioned and that he was a potential witness. Although defendant submitted to the police request to go to the station, the

submission does not necessarily indicate that defendant thought he was under arrest. As the court stated in *People v. Bridges* (1st Dist. 1970), 123 Ill. App. 2d 58, 65, 259 N.E.2d 626, "It is possible that [defendant's] 'submission' was subject to a belief that he might be questioned, but that is quite a different matter [than a belief that he was under arrest]."

■■■ The case at bar differs from *People v. Schlottman* (3d Dist. 1976), 37 Ill. App. 3d 62, 344 N.E.2d 8, cited by defendant. In *Schlottman* the court held that there was no justification for the stop in which police, who had no description of a particular vehicle and did not know who was in the car, stopped defendant's car because it was proceeding toward the scene of an alleged "pot" party. In *People v. Thornton* (1st Dist. 1977), 47 Ill. App. 3d 604, 365 N.E.2d 6, the court held that probable cause existed for the arrest of defendants and the search of an automobile on the basis that the automobile matched the description of the vehicle used by assailants in leaving the scene of a crime, and the automobile was seen about 30 minutes later near the scene of the crime. In the case at bar the automobile was not stopped until several weeks after commission of the crime. However, it was seen in the vicinity of a suspect's house, which suspect was known to have access to such a vehicle. The police had more than a bare suspicion that the vehicle contained someone who had committed a crime. Although defendant's testimony at the preliminary hearing differs from the officers' account, the trial court heard the evidence and determined the credibility of the witnesses. The trial court's rulings on defendant's motions should not be disturbed.

## II.

Defendant next contends that the State was collaterally estopped from attempting to prove defendant guilty on the theory of accountability because in a civil forfeiture proceeding the State failed to present sufficient evidence that defendant's automobile had been used in commission of an offense. The State contends that collateral estoppel does not apply since the only issue litigated in the forfeiture proceeding was whether the particular automobile had been used in the crime. The State contends that the ultimate fact of defendant's guilt was not at issue in the civil proceeding.

■■ Collateral estoppel means that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." (*People v. Borchers* (1977), 67 Ill. 2d 578, 582, 367 N.E.2d 955.) In *People v. Warne* (2d Dist. 1976), 39 Ill. App. 3d 894, 350 N.E.2d 836, *cert. denied* (1977), 429 U.S. 1107, 51 L. Ed. 2d 559, 97 S. Ct. 1139, and in *People v. Vahle* (4th Dist. 1978), 60 Ill. App. 3d 391, 376 N.E.2d 766, the courts held that the State is collaterally estopped from relitigating an issue only if the

earlier decision on that issue negatived the possibility of guilt in the later prosecution.

■■ A forfeiture proceeding under section 36—1 is a civil action in rem against an item which was used in the commission of an offense. (Ill. Rev. Stat. 1975, ch. 38, par. 36—1; *People ex rel. Hanrahan v. One 1965 Oldsmobile* (1972), 52 Ill. 2d 37, 284 N.E.2d 646, *rev'd on other grounds per curiam sub nom. Robinson v. Hanrahan* (1972), 409 U.S. 38, 34 L. Ed. 2d 47, 93 S. Ct. 30.) As the State contends, the only fact which is determined is whether the particular vehicle in question was used in the commission of an offense. The trial court in the civil proceeding does not examine the issue of a defendant's innocence or guilt.

■■ In the case at bar collateral estoppel does not apply because the ultimate issue of whether defendant participated in the crime was not litigated in the civil forfeiture proceeding. Also, the finding that the particular automobile was not used does not negate the possibility of defendant's guilt. It is well established that there is no distinction between an accessory and a principal and both may be punished in the same manner. (*People v. Dukett* (1974), 56 Ill. 2d 432, 308 N.E.2d 590, *cert. denied* (1974), 419 U.S. 965, 42 L. Ed. 2d 180, 95 S. Ct. 226.) Defendant was not acquitted in the forfeiture proceeding upon the issues of whether an offense was committed and whether he committed it, and thus collateral estoppel does not apply.

### III.

■■ Defendant next contends that the trial court erred in giving a jury instruction regarding accountability because it was not supported by the evidence. The State contends that the instruction was proper on the basis of defendant's admissions. A person is legally accountable for the conduct of another when either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, or agrees or attempts to aid, such other person in the planning or commission of the offense. (Ill. Rev. Stat. 1975, ch. 38, par. 5—2(c).) The fact that defendant may be guilty of direct participation in the crime does not render an instruction on accountability theory improper if there was also evidence that defendant aided another in the commission of the crime. (*People v. Stark* (1966), 33 Ill. 2d 616, 213 N.E.2d 503.) Where the evidence raises the issue of whether the accused participated in any part of the crime, even slight evidence upon the theory of accountability will justify the giving of an instruction. *People v. Addison* (1st Dist. 1977), 56 Ill. App. 3d 92, 371 N.E.2d 1025; *People v. Clifford* (1st Dist. 1976), 38 Ill. App. 3d 915, 349 N.E.2d 922.

■■ The voluntary admission of an accused is always admissible for the purpose of establishing his guilt. (*People v. Mosley* (1961), 23 Ill. 2d 211,

214, 177 N.E.2d 851.) In *People v. Addison* the court held that evidence consisting of defendant's version of the incident could support an accountability instruction. In the case at bar defendant's statements to the police, which were admitted into evidence, supported the State's theory of accountability. Thus the court did not err in giving the instruction.

## IV.

Defendant next contends that the trial court erred in giving a jury instruction regarding admissions. Defendant contends that the statement made by defendant to the police was exculpatory and was not an admission.

An admission is a statement by an accused of fact or facts which, when taken in connection with proof of other facts, may lead to an inference of guilt, but from which guilt does not necessarily follow. (*People v. Clark* (1st Dist. 1975), 32 Ill. App. 3d 926, 337 N.E.2d 291; *People v. Kurzydlo* (1st Dist. 1974), 23 Ill. App. 3d 791, 320 N.E.2d 80, *appeal denied* (1975), 58 Ill. 2d 594.) It has been held that statements, even though exculpatory, may lead to an inference of guilt and constitute an admission. (*People v. Smith* (1st Dist. 1978), 59 Ill. App. 3d 480, 491, 375 N.E.2d 941.) In *People v. Clay* (1967), 38 Ill. 2d 17, 230 N.E.2d 191, the court held defendant's statement that he was at the scene of the crime but had nothing to do with it, to be an admission. In *People v. Smith* defendant's statement that he was at the scene of the crime moments before the crime was committed was held to constitute an admission. The court in *Smith* stated at page 491:

> "Although these statements could be construed as exculpatory, a negative inference tending to establish guilt can likewise be drawn. [Citation.] Thus, as the admission instruction admonishes, it was for the jury to determine the weight to be given these statements."

■■ Similarly in the case at bar, defendant's statements that he drove the "getaway" vehicle, although he knew nothing about the crime, may lead to an inference of guilt. The statements constituted admissions and thus the trial court did not err in giving a jury instruction regarding admissions.

## V.

Defendant next contends that the prosecution in closing argument improperly referred to defendant's failure to testify. The State contends that the prosecution's statements were permissible comments on the uncontradicted nature of the State's evidence.

■■ The fifth amendment privilege against self-incrimination, as it applies to the states through the fourteenth amendment, forbids comment

by the prosecution on defendant's failure to testify on his own behalf. (*Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229.) A direct reference by the prosecution to defendant's failure to testify is prejudicial error for which a new trial must be granted. (Ill. Rev. Stat. 1975, ch. 38, par. 155—1; *People v. Burton* (1969), 44 Ill. 2d 53, 254 N.E.2d 527.) While the prosecution may refer in closing argument to the testimony of its own witnesses and point out that their testimony has not been contradicted, it may not comment in a manner that is "intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify." (44 Ill. 2d 53, 56.) It is permissible for the prosecution to comment on the uncontradicted nature of the State's case even where the only person who could have contradicted the State's evidence was the defendant himself. (*People v. Skorusa* (1973), 55 Ill. 2d 577, 584, 304 N.E.2d 630.) In determining whether statements by the prosecution are improper, the statements must be read in the context of the prosecution's argument. *People v. Asey* (1st Dist. 1967), 85 Ill. App. 2d 210, 229 N.E.2d 368, *appeal denied* (1967), 37 Ill. 2d 625.

In the case at bar the prosecutor made the following statements after discussing the testimony of Charles Davis:

"Consider all these factors when you reflect on the preposterous statement by that man Larry Fulton.

Incidentally, that was his third version of his involvement in the incident when he finally wrote it down on paper and signed his name to it.

He says in that statement that at Donald Howard's request, a friend of only a few weeks, Donald Howard called him up at 8917 Greenwood and said, pick up a couple of fellows for me at 87th and Cottage Grove and take them downtown for a band rehearsal. He didn't ask who they were, anything like that, but he goes to 87th and Cottage Grove, picks up two men he had never seen before.

Incidentally, I didn't hear any testimony about the band instruments or musical instruments.

These two individuals get in Larry Fulton's car and at their direction he drives them downtown. He said he parked in the vicinity of where this incident occurred and the men got out.

That conflicts with the testimony of Charles Davis, who has no reason to lie."

■■ Defendant contends that the comment "I didn't hear any testimony about the band instruments" is a direct reference to defendant's failure to testify. The comment was part of a summary discussion of the State's evidence, which included defendant's statement to the police. The statement did not directly refer to defendant but was a comment on the

evidence. This is supported by the prosecution's reference both before and after the comment to the testimony of Charles Davis. The comment was not "calculated" to draw attention to the fact that defendant failed to testify.

## VI.

Finally, defendant contends that the State did not prove him guilty of murder, attempt murder and armed robbery beyond a reasonable doubt.

■■ We note initially that the conviction for attempt murder must be reversed in light of the recent supreme court decision of *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28. In *Harris* the court held that instructions defining the crime of attempt murder are erroneous if they permit the jury to return a verdict of guilty upon evidence that the defendant intended only to cause great bodily harm. The court held that the instructions must be clear that to convict for attempl murder, nothing less than a specific intent to kill is required. Since the instructions given in the case at bar were substantially the same as those given in *Harris*, we find that the jury was erroneously instructed regarding the mental state required to convict for attempt murder.

In reference to the convictions for murder and armed robbery, defendant contends that the State did not prove beyond a reasonable doubt that defendant was involved in any crime.

It is established that the determination of a jury will not be disturbed unless there are facts and circumstances which create a reasonable doubt as to defendant's guilt. (*People v. Harris* (1972), 53 Ill. 2d 83, 288 N.E.2d 873.) The sufficiency of eyewitness identification, the credibility of the witnesses and the weight to be given to their testimony and the inferences to be drawn therefrom are matters within the province of the jury. (*Harris*; *People v. Rogers* (5th Dist. 1974), 23 Ill. App. 3d 115, 318 N.E.2d 715.) Although a conviction cannot stand if identification testimony is vague, doubtful and uncertain (*People v. Hughes* (1st Dist. 1974), 17 Ill. App. 3d 404, 308 N.E.2d 137), the testimony of a single witness is sufficient to establish guilt beyond a reasonable doubt provided such witness had ample opportunity to observe defendant and such witness is credible. *People v. Stringer* (1972), 52 Ill. 2d 564, 569, 289 N.E.2d 631.

DiMeo testified that he observed defendant from arm's length distance for a period of approximately 15 seconds to three or four minutes in a hallway lit by fluorescent lights. In *People v. Hahn* (4th Dist. 1976), 39 Ill. App. 3d 969, 350 N.E.2d 839, the court held that a witness had sufficient opportunity to make an identification after the witness observed defendant for about two seconds under good lighting conditions. In *People v. Griswold* (3d Dist. 1977), 54 Ill. App. 3d 246, 369

N.E.2d 392, the court held that a policeman, who could describe defendant only as a "big man," had ample opportunity to observe defendant and make an identification. The policeman in *Griswold* observed defendant, who was sitting in a parked car, from across a street for a total of about one minute under good lighting conditions. In *People v. Harrison* (1st Dist. 1978), 57 Ill. App. 3d 9, 372 N.E.2d 915, the court held that a witness, who could not describe defendant's clothing and did not know whether defendant had a mustache, had an adequate opportunity to observe defendant after viewing defendant for 30 seconds from a distance of four feet in a well-lighted store. The court in *Harrison* stated that the lack of details of a witness' description was a matter of weight of evidence for the jury.

■■ In the case at bar DiMeo was in close proximity to defendant, and the lighting was good. Although DiMeo was unsure as to the amount of time he viewed defendant, DiMeo testified that he glanced directly at defendant several times. The fact that DiMeo did not give a description to the police was a matter of credibility to be considered by the jury. It was not unreasonable for the jury to conclude that the witness had an adequate opportunity to observe defendant, and that the witness' identification of defendant was sufficient to prove defendant guilty beyond a reasonable doubt.

■■ Based on the foregoing, we affirm defendant's convictions for murder and armed robbery and reverse the conviction for attempt murder. Since the jury was instructed on the charge of aggravated battery and since aggravated battery is a lesser included offense of attempt murder (*People ex rel. Walker v. Pate* (1973), 53 Ill. 2d 485, 292 N.E.2d 387), we reinstate the aggravated battery conviction pursuant to Supreme Court Rule 615(b) and remand the cause for resentencing.

Affirmed in part and reversed in part and remanded.

DOWNING and HARTMAN, JJ., concur.